UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JAVIER LABOY,

                      Plaintiff,                        15 Civ. 3321 (RA) (AJP)

           -against-                       **REPORT & RECOMMENDATION**

OFFICE EQUIPMENT & SUPPLY CORP.,
MICHAEL PRINCE AND STEVEN MAGLIO,

                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge.**

**To the Honorable Ronnie Abrams, United States District Judge:**

        On March 10, 2016, Judge Abrams entered a default judgment against all defendants (Dkt. No. 20) and referred this matter for an inquest on damages (Dkt. No. 19).

        For the reasons discussed below, the Court should enter judgment for Laboy against all defendants, jointly and severally, in the amount of $84,185.94, plus $30,121.74 in attorneys' fees and costs, and $1,840.26 in prejudgment interest, plus continuing prejudgment interest of $1.74 per day until judgment is entered.

## FACTS

        "Where, as here, 'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil 3d § 2688 at 58-59 (3d ed. 1998)).

**The Complaint**

The complaint (Dkt. No. 1) alleges as follows:

Defendants sell office supplies and employed Laboy as a delivery driver from December 2011 through December 23, 2014.  (Compl. ¶¶ 14, 16.)  During that time, defendants Prince and Maglio supervised the truck loading, and "exercised control over the terms and conditions" of Laboy's employment as the principals of defendant Office Equipment & Supply Corp. (Compl. ¶¶ 9-12, 19.)  Laboy worked from 7:30 A.M. to 7:50 P.M., without a break, for an average of sixty-two hours per week.  (Compl. ¶¶ 17, 22, 27, 32.)  Defendants paid Laboy $425.00 per week without regard to the number of hours he worked and never paid overtime.  (Compl. ¶¶ 34-35.) Defendants terminated Laboy "after he asked for minimum wage."  (Compl. ¶¶ 36-37.)

Prince and Maglio referred to Laboy "and other dark skinned individuals" by the N-word on an "almost daily" basis throughout Laboy's employment.  (Compl. ¶¶ 41-43.)  Laboy claims that the racial discrimination made it difficult to perform his job and interact with Prince and Maglio.  (Compl. ¶¶ 52-53.)  Laboy told Prince and Maglio "to stop calling him [the N-word] on several occasions" because he "took offense to that language," but they refused, and thereafter terminated Laboy.  (Compl. ¶¶ 48-50, 54.)  Defendants hired another person to perform Laboy's job. (Compl. ¶ 56.)

Laboy brought this action under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL") and New York City Human Rights Law ("NYCHRL").  (Compl. ¶¶ 1-3.) Laboy alleges that defendants willfully violated the FLSA and NYLL.  (Compl. ¶¶ 59, 65, 67, 71-72, 77-78, 83, 86-87.)  The complaint seeks unpaid minimum and overtime wages and liquidated damages under the FLSA (Compl. ¶¶ 57-73), overtime, spread of hours and liquidated damages under the NYLL (Compl. ¶¶ 74-88), lost wages and compensatory and punitive damages under the

3

NYCHRL (Compl. ¶¶ 89-100; Compl. Wherefore ¶¶ g, i), and attorneys' fees and costs (Compl. Wherefore ¶¶ j-k).

**Inquest Submissions**

Laboy submitted an affidavit attesting to most of the complaint's allegations.  (See generally Ex. E: Laboy Aff.)[1]  Laboy avers that he was paid a flat weekly rate of $425 and "worked no fewer than 62 hours per week," Monday through Friday, from December 2011 through December 15, 2014.  (Laboy Aff. ¶¶ 2-3, 10, 13.)  Laboy alleges that Prince and Maglio are the principals of defendant Office Equipment & Supply Corp. with "the power to hire and fire employees." (Laboy Aff. ¶¶ 6-7.) Prince and Maglio provided Laboy his job assignments, set his schedule, and paid him. (Laboy Aff. ¶ 7.)

Laboy was "told not to come to work after December 15, 2014" and was formally fired on December 23, 2014 (Laboy Aff. ¶ 3), "shortly after" complaining about his wages and discrimination (Laboy Aff. ¶¶ 25-26).  Laboy believes that the "real reason the Defendants fired [him] was because [he] complained about unpaid wages and discrimination." (Laboy Aff. ¶ 28.)

Laboy claims that defendants' discrimination and his subsequent unemployment caused him to suffer: (1) "[a]n inability to sleep for more than a few hours at a time"; (2) an "anxiety attack in 2013"; (3) symptoms of depression including hopelessness, sadness, loss of appetite, insomnia and irritability; (4) marital strain; and (5) low self-esteem.  (Laboy Aff. ¶ 31.)

Laboy began work at a new job on March 30, 2015 that pays more than his position with defendants. (Laboy Aff. ¶ 30.)

---

[1]     References to Exhibits are to the exhibits to the Costin Affidavit (Dkt. No. 26).

## ANALYSIS

### I.    APPLICABLE LEGAL STANDARDS

The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'"  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

In a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct.  See, e.g., Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) ("[A]n employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."); Kuebel v. Black & Decker Inc., 643 F.3d 352, 362-64 (2d Cir. 2011); Grochowski v. Phoenix Constr., 318 F.3d 80, 87-88 (2d Cir. 2003); Harold Levinson Assocs., Inc. v. Chao, 37 F. App'x 19, 20 (2d Cir. 2002), cert. denied, 546 U.S. 933, 126 S. Ct. 415 (2005); Reich v. S. New Eng. Telecomms. Corp., 121 F.3d 58, 66 (2d Cir. 1997); Zhen Ming Chen v. New Fresco Tortillas Taco LLC, 15 Civ. 2158, 2015 WL 5710320 at *2 (S.D.N.Y. Sept. 25, 2015) (Peck, M.J.); Carrasco v. W. Village Ritz Corp., 11 Civ. 7843, 2012 WL 2814112 at *2 (S.D.N.Y. July 11, 2012)

(Peck, M.J.), R. & R. adopted, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012).[2/]

## II.   APPLICATION OF THE STANDARDS TO THIS CASE

The Court has reviewed plaintiff's affidavit (Ex. E) and damages calculations (see Dkt. No. 27: Laboy Br.) and accepts his estimates of hours worked.

### A.   Statute of Limitations

Laboy brings claims pursuant to the FLSA and NYLL.  The statute of limitations is six years under the NYLL and two years under the FLSA, increased to three years for "willful" violations.  See N.Y. Labor Law § 198(3); 29 U.S.C. § 255(a).  The complaint alleges that defendants' FLSA and NYLL violations were willful.  (See page 2 above.)  By virtue of the entry of default, the Court accepts Laboy's allegation as true.  See, e.g., Baltierra v. Advantage Pest Control Co., 14 Civ. 5917, 2015 WL 5474093 at *3 (S.D.N.Y. Sept. 15, 2015) (Peck, M.J.); Alvarez v. 215 N. Ave. Corp., 13 Civ. 7049, 2015 WL 3855285 at *1, *3 (S.D.N.Y. June 19, 2015); Fu v. Pop Art Int'l Inc., 10 Civ. 8562, 2011 WL 4552436 at *4 (S.D.N.Y. Sept. 19, 2011) (Peck, M.J.), R. & R. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011);

---

[2/]    See also, e.g., Fu v. Pop Art Int'l Inc., 10 Civ. 8562, 2011 WL 4552436 at *2 (S.D.N.Y. Sept. 19, 2011) (Peck, M.J.), R. & R. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011); Alejo v. Darna Rest., 09 Civ. 5436, 2010 WL 5249383 at *3 (S.D.N.Y. Dec. 17, 2010) (Peck, M.J.), R. & R. adopted as modified, 2011 WL 165413 (S.D.N.Y. Jan. 18, 2011); Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 388-89 (E.D.N.Y. 2007); Chan v. Sung Yue Tung Corp., 03 Civ. 6048, 2007 WL 313483 at *23-24 (S.D.N.Y. Feb. 1, 2007) (Lynch, D.J.); Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 332-33 (S.D.N.Y. 2005); Liu v. Jen Chu Fashion Corp., 00 Civ. 4221, 2004 WL 33412 at *3 (S.D.N.Y. Jan. 7, 2004) (Peck, M.J.); Mascol v. E & L Transp. Inc., 387 F. Supp. 2d 87, 93-94 (E.D.N.Y. 2005); Moon v. Kwon, 248 F. Supp. 2d 201, 219 (S.D.N.Y. 2002) (Lynch, D.J.); Chao v. Vidtape, Inc., 196 F. Supp. 2d 281, 293 (E.D.N.Y. 2002), aff'd as modified on other grounds, 66 F. App'x 261 (2d Cir.), cert. denied, 540 U.S. 1047, 124 S. Ct. 807 (2003); Cao v. Chandara Corp., 00 Civ. 8057, 2001 WL 34366628 at *4-5 (S.D.N.Y. July 25, 2001); Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 624-25 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.).

Wicaksono v. XYZ 48 Corp., 10 Civ. 3635, 2011 WL 2022644 at *6 (S.D.N.Y. May 2, 2011)

("[T]he defendant is in default, and therefore the plaintiffs' allegation that its conduct was willful

is credited."), R. & R. adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011); Jin M. Cao v. Wu

Liang Ye Lexington Rest., Inc., 08 Civ. 3725, 2010 WL 4159391 at *2 (S.D.N.Y. Sept. 30, 2010)

(Chin, D.J.) ("[D]efendants defaulted and thus plaintiffs' allegations that the FLSA violations were

willful are deemed admitted.").

Thus, the three-year statute of limitations applies to Laboy's FLSA claims, and the

six-year statute of limitations applies to his NYLL claims.  Since Laboy's complaint was filed on

April 29, 2015, he is entitled to recover damages for FLSA violations beginning on April 29, 2012,

and for NYLL violations beginning in December 2011 (he did not work for defendants before that).

### B.   Minimum Wage and Overtime Pay

The FLSA requires employers to pay employees at least the federal minimum wage

for every hour worked.  29 U.S.C. § 206.  Where the state minimum wage exceeds the federal

minimum wage, federal law does not preempt the higher state minimum.  See 29 U.S.C. § 218(a)

("No provision of this chapter or of any order thereunder shall excuse noncompliance with any

Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum

wage established under this chapter . . . .").  The NYLL also protects against minimum wage

underpayment.  12 N.Y.C.R.R. § 142-2.1.  Furthermore, the FLSA and NYLL require employers

to pay employees one and one-half times the minimum wage for any hours over forty in a given

week.  29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.[3/]

---

[3/]     There is no indication that Laboy, in his position as a delivery driver, falls within the "outside salesperson" (or any other) exemption to the NYLL or FLSA.  12 N.Y.C.R.R. § 142-2.14(c)(5); 29 U.S.C. § 213(a)(1).  In any event, defendants have not responded and "[t]ypically, statutory exemptions should be asserted as affirmative defenses . . . ."  Gjoni v.

The statutory minimum wage in New York and under federal law between December 2011 and December 30, 2013 was $7.25 per hour.  12 N.Y.C.R.R. § 142-2.1(a)(2); 29 U.S.C. § 206(a)(1)(C).  From December 31, 2013 to December 30, 2014, New York's minimum wage was $8.00 per hour, which exceeded the federal minimum wage of $7.25.  N.Y. Labor Law § 652(1); see 29 U.S.C. § 206.

Laboy's complaint seeks minimum wages under the FLSA, but strangely does not seek minimum wages under the NYLL.  (See page 2 above.)  Federal Rule of Civil Procedure 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  "While notice is one of the policy objectives underlying Rule 54(c), notice alone is insufficient to satisfy the rule.  The timing and method of such notice (i.e., that it come before the decision to default and be evident from the face of the complaint) are both critical to the analysis."  Silge v. Merz, 510 F.3d 157, 161 (2d Cir. 2007) (emphasis in original).  NYLL minimum wages would "exceed in amount," Fed. R. Civ. P. 54(c), the damages sought in the complaint because the NYLL's six-year statute of limitations would allow Laboy to claim unpaid minimum wages from December 2011 through April 29, 2012 that otherwise would not be recoverable under the FLSA's three-year statute of limitations (see pages 5-6 above).  See, e.g., Guaman v. Krill Contracting, Inc., No. 14-CV-4242, 2015 WL 3620364 at *8 (E.D.N.Y. June 9, 2015) ("In the complaint Plaintiff only sought the overtime premium for this time period, but in his motion for default judgment and supporting papers he seeks in excess of his overtime premium . . . . . Plaintiff's motion for default judgment and supporting papers exceeds the amount demanded in

---

Orsid Realty Corp., 14 Civ. 8982, 2015 WL 4557037 at *7 (S.D.N.Y. July 22, 2015), appeal withdrawn (Nov. 16, 2015); see also, e.g., Domenech v. Parts Auth., Inc., No. 15-2460-CV, 2016 WL 3448306 at *1 (2d Cir. June 17, 2016).

the pleadings, as well as differs in kind, and would, therefore, be improper to award in a motion for default judgment."); Hosking v. New World Mortg., Inc., No. 07-CV-2200, 2013 WL 5132983 at *6 (E.D.N.Y. Sept. 12, 2013) ("Here, the original Complaint against New World Mortgage asserted a FLSA claim for overtime only.  [Plaintiff] added the FLSA minimum wage claim only after obtaining a default judgment against New World Mortgage. . . .  The Court finds that Plaintiffs are not entitled to damages for the later-added minimum wage claim against New World Mortgage." (emphasis in original)), aff'd, 570 F. App'x 28 (2d Cir. 2014).  The Court thus should award Laboy minimum wages only under the FLSA for the three-year FLSA limitations period.

To calculate unpaid minimum wages, Laboy's counsel first determined the difference between Laboy's hourly rate and the statutory minimum wage during the relevant time period.  (Dkt. No. 27: Laboy Br. at 3.)  Laboy's counsel used the flat weekly rate of $425 divided by 62 hours per week (see page 2 above) to determine that Laboy earned only $6.85 per hour for the duration of his employment with defendants (Laboy Br. at 3).  Laboy worked approximately 87.28571 weeks between April 29, 2012 (the FLSA limitations period) and December 30, 2013 when the minimum wage was $7.25, and 49 weeks between December 31, 2013 and December 15, 2014 when the state minimum wage rose to $8.00.  (See Laboy Br. at 3.)

For the period of April 29, 2012 through December 30, 2013, counsel determined that Laboy was entitled to $449.50 per week ($7.25 x 62 hours per week) for his straight time, i.e., time not including an overtime premium.  (Id.)  Laboy also worked twenty-two hours of overtime each week (see page 2 above) and should have received an additional $79.75 in weekly overtime compensation (Laboy Br. at 3).  To determine Laboy's unpaid overtime wages, counsel multiplied the hours worked per week in excess of forty by 0.5, and multiplied the resulting figure by the applicable minimum wage (22 hours x 0.5 x $7.25).  (Laboy Br. at 3.)  Thus, Laboy should have

9

been paid $529.25 per week, not $425.  (Laboy Br. at 3-4.)   Counsel calculated the weekly difference between Laboy's actual and earned pay ($529.25 - $425) to reach the weekly underpayment of $104.25.  (Id.)  When that is multiplied by 87.28571 weeks, it totals $9,099.53.  (Id.)[4]  Laboy also is entitled to NYLL overtime (but not minimum) wages from December 1, 2011 through April 29, 2012 that are calculated by subtracting Laboy's actual wages during each weekly overtime period of $150.70 ($6.85 x 22 hours) from the full amount owed of $239.25 ($7.25 x 1.5 x 22 hours), for a total of $88.55 in unpaid overtime per week.  Laboy therefore should be awarded $1,897.49 in overtime ($88.55 x 21.42857 weeks).[5]

For the period December 31, 2013 through December 15, 2014, when the state minimum wage rose to $8.00 per hour (see page 7 above), counsel determined that Laboy was entitled to $496 per week ($8.00 x 62 hours per week) for his straight time.  (Laboy Br. at 3.)  The Court cannot, however, apply the New York statutory minimum wage of $8.00 because the complaint sought only FLSA minimum wages.  (See pages 2-3, 7-8 above.)  Although the FLSA provides that "[n]o provision of this chapter . . . shall excuse noncompliance with any . . . State law or municipal ordinance establishing a minimum wage higher than the" federal minimum wage, 29 U.S.C. § 218(a), "[a] careful reading of this section makes clear that while the FLSA explicitly disclaims preemption of state law, it does not incorporate state law."  Fuk Lin Pau v. Jian Le Chen, No. 14CV841, 2015 WL 6386508 at *8 (D. Conn. Oct. 21, 2015) (emphasis in original); accord, e.g., Gurung v. Malhotra, 851 F. Supp. 2d 583, 592 (S.D.N.Y. 2012); Lanzetta v. Florio's Enters., Inc., 08 Civ. 6181, 2011 WL 3209521 at *3-4 (S.D.N.Y. July 27, 2011) (Chin, D.J.); Wicaksono v.

---

[4]    611 days passed from April 29, 2012 to December 30, 2013.

[5]    150 days passed from December 1, 2011 to April 29, 2012.

XYZ 48 Corp., 10 Civ. 3635, 2011 WL 2022644 at *7 (S.D.N.Y. May 2, 2011), R. & R. adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011).  Thus, Laboy's minimum wages should be calculated only at the federal rate of $7.25 per hour, which entitles him to $449.50 per week ($7.25 x 62 hours per week) for his straight time.  Laboy's twenty-two additional hours of overtime, using the NYLL statutory minimum wage, are calculated by subtracting Laboy's wages during each weekly overtime period of $159.50 ($7.25 x 22 hours) from the full amount owed of $264 ($8.00 x 1.5 x 22 hours), for a total of $104.50 in unpaid overtime per week.  Laboy thus was owed $554 per week resulting in a weekly underpayment of $129 ($554 **-** $425) over the course of 49.857143 weeks for a total of $6,431.57.[6/]

Thus, defendants owe Laboy a total of $17,428.59 in unpaid minimum and overtime wages.

### C.   **Liquidated Damages**

Laboy seeks double liquidated damages, under both the FLSA and the NYLL.  (Dkt. No. 27: Laboy Br. at 4-5.)

Under the FLSA, a plaintiff is entitled to liquidated damages of 100%.  29 U.S.C. § 216(b); see, e.g., Alvarez v. 215 N. Ave. Corp., 13 Civ. 7049, 2015 WL 3855285 at *1 (S.D.N.Y. June 19, 2015); Marfak v. Peretta, 10 Civ. 7785, 2011 WL 1758625 at *1 (S.D.N.Y. May 6, 2011) ("The FLSA imposes the obligation to pay unpaid overtime compensation and 'an additional equal amount as liquidated damages' on employers who violate its requirement that overtime wages be paid." (quoting 29 U.S.C. § 216(b))); Alejo v. Darna Rest., 09 Civ. 5436, 2010 WL 5249383 at *6 (S.D.N.Y. Dec. 17, 2010) (Peck, M.J.), R. & R. adopted as modified, 2011 WL 165413 (S.D.N.Y.

---

[6/]     349 days passed from December 31, 2013 to December 15, 2014.

Jan. 18, 2011).[7]  Here, the FLSA's three-year statute of limitations for willful violations applies, and

Laboy is entitled to liquidated damages on his minimum wage and overtime claim from April 29,

2012.  See 29 U.S.C. § 255(a).

            In addition to federal liquidated damages, Laboy seeks state liquidated damages for

his unpaid wages.  (See page 2 above.)  As defendants defaulted, Laboy's allegations that defendants'

conduct was "willful" (see page 2 above) are credited.  (See also cases cited at pages 5-6 above.)

On December 10, 2010, the New York legislature amended New York Labor Law §§ 198(1–a) and

663(1) to incorporate the federal standard, increasing the amount of available liquidated damages

from 25% to 100%, effective April 9, 2011.  2010 N.Y. Sess. Laws ch. 564 §§ 1, 3; N.Y. Labor Law

§§ 198(1–a), 663(1).

            "There is no appellate authority" in this Circuit "as to whether a plaintiff may recover

cumulative (sometimes called 'simultaneous' or 'stacked') liquidated damages under the FLSA and

NYLL . . . ."  Inclan v. N.Y. Hosp. Grp., 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015).  Nevertheless,

"an increasing number of FLSA cases"–especially since the NYLL was amended to provide 100%

liquidated damages–have ruled that a plaintiff is not entitled to both federal and state liquidated

damages because they serve the same practical purposes in compensating the plaintiff and deterring

wage violations.  Yun Hong Hua v. Eight Star Inc., No. 15 CIV. 0275, 2015 WL 2354322 at *4

---

[7]    See also, e.g., Vasquez v. Ranieri Cheese Corp., No. 07-CV-464,  2010 WL 1223606 at *18
(E.D.N.Y. Mar. 26, 2010) ("FLSA entitles an employee to recover an amount equal to the
unpaid wages (i.e., an additional 100% of the unpaid wages awarded) in the form of
liquidated damages."); Dong v. CCW Fashion Inc., 06 Civ. 4973, 07 Civ. 9741, 2009 WL
884680 at *4 (S.D.N.Y. Feb. 19, 2009) ("The FLSA allows for an additional 100% of the
amount owed for minimum wage and/or overtime violations, which means that those
amounts are doubled."), R. & R. adopted, 2009 WL 884668 (S.D.N.Y. Apr. 1, 2009); Ting
Yao Lin v. Hayashi Ya II, Inc., 08 Civ. 6071, 2009 WL 289653 at *7 (S.D.N.Y. Jan. 30,
2009) (Peck, M.J.), R. & R. adopted, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009).

(E.D.N.Y. May 15, 2015) (collecting cases) ("[T]he use of the FLSA and state law to award double liquidated damages is effectively a judge-created treble damage remedy that neither legislature, Congress or New York, has envisioned."); see also, e.g., Quiroz v. Luigi's Dolceria, Inc., No. 14-CV-871, 2016 WL 2869780 at *6 (E.D.N.Y. May 17, 2016) ("[T]he recent trend has moved away from awarding liquidated damages under both the FLSA and the NYLL, and instead making a single award under the statute that provides the greater recovery.  Continuing to follow that trend, I decline to provide cumulative liquidated damages under both statutes." (citing cases)); Lopez v. Ploy Dee, Inc., 15 Civ. 647, 2016 WL 1626631 at *2 n.1 (S.D.N.Y. Apr. 21, 2016) ("there is persuasive authority in this circuit holding that FLSA plaintiffs cannot 'double recover' liquidated damages under both" the FLSA and the NYLL); Hengjin Sun v. China 1221, Inc., 12 Civ. 7135, 2016 WL 1587242 at *4 (S.D.N.Y. Apr. 19, 2016) ("NYLL's recent amendments 'have undermined the basis,' such as it was, for distinguishing between FLSA's and NYLL's liquidated damages provisions.  In the absence of appellate authority on the subject, the Court joins the emerging jurisprudential trend and finds that an employee may not recover cumulative liquidated damages under both the FLSA and NYLL for overlapping claims after November 24, 2009." (citations omitted)); Banegas v. Mirador Corp., 14 Civ. 8491, 2016 WL 1451550 at *2 n.2 (S.D.N.Y. Apr. 12, 2016); Castillo v. RV Transp., Inc., 15 Civ. 0527, 2016 WL 1417848 at *3 (S.D.N.Y. Apr. 11, 2016); Chen v. JP Standard Constr. Corp., No. 14-CV-1086, 2016 WL 2909966 at *12-13 (E.D.N.Y. Mar. 18, 2016), R. & R. adopted, 2016 WL 2758272 (E.D.N.Y. May 12, 2016); Perez v. Queens Boro Yang Cleaner, Inc., No. 14-CV-7310, 2016 WL 1359218 at *6 (E.D.N.Y. Mar. 17, 2016), R. & R. adopted, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016); Jeong Woo Kim v. 511 E. 5th St., LLC, 133 F. Supp. 3d 654, 667 (S.D.N.Y. 2015) ("The Plaintiffs seek to recover liquidated damages under both statutes.  Prior to the change in the [New York Labor] law, many courts permitted such recoveries, reasoning that the

liquidated damages provisions of the FLSA and NYLL served different purposes.  As Judge

Buchwald has explained [in Inclan v. N.Y. Hospitality Grp., Inc.], however, such double recoveries

should no longer be permitted."); Zhen Ming Chen v. New Fresco Tortillas Taco LLC, No. 15 Civ.

2158, 2015 WL 5710320 at *9 (S.D.N.Y. Sept. 25, 2015) (Peck, M.J.); Bosoro v. Am.

Comprehensive Healthcare Med. Grp., P.C., No. 14-CV-1099, at *7 (E.D.N.Y. Aug. 31, 2015), R.

& R. adopted, 2015 WL 5686481 (E.D.N.Y. Sept. 25, 2015); Chowdhury v. Hamza Exp. Food

Corp., No. 14-CV-150, 2015 WL 5541767 at *8 (E.D.N.Y. Aug. 21, 2015), R. & R. adopted, 2015

WL 5559873 (E.D.N.Y. Sept. 18, 2015); Santana v. Brown, 14 Civ. 4279, 2015 WL 4865311 at *5

(S.D.N.Y. Aug. 12, 2015); Garcia v. JonJon Deli Grocery Corp., 13 Civ. 8835, 2015 WL 4940107

at *6 (S.D.N.Y. Aug. 11, 2015); McGlone v. Contract Callers Inc., 114 F. Supp. 3d 172, 174

(S.D.N.Y. 2015); Olvera v. Los Taquitos Del Tio Inc., No. 15-CV-1262, 2015 WL 3650238 at *2

n.2 (E.D.N.Y. June 11, 2015).[8/]  The "prevailing view" now is that double liquidated damages should

---

[8/]     Accord, e.g., Inclan v. N.Y. Hospitality Grp., Inc., 95 F. Supp. 3d at 505 (citing cases);
Jimenez v. Computer Express Int'l Ltd., No. 14-CV-5657, 2015 WL 1034478 at *2
(E.D.N.Y. March 10, 2015); Chuchuca v. Creative Customs Cabinets Inc., 13 Civ. 2506,
2014 WL 6674583 at *15-16 (E.D.N.Y. Nov. 25, 2014); Man Wei Shiu v. New Peking Taste
Inc., No. 11-CV-1175, 2014 WL 652355 at *13 (E.D.N.Y. Feb. 19, 2014); Ramirez v. H.J.S.
Car Wash Inc., No. CV-11-2664, 2013 WL 1437600 at *7 (E.D.N.Y. Apr. 9, 2013); Villegas
v. Monica Rest. Corp., No. 12-CV-4131, 2013 WL 4046261 at *3 (E.D.N.Y. Aug. 8, 2013);
Gortat v. Capala Bros., 949 F. Supp. 2d 374, 381 (E.D.N.Y. 2013); Parilla v. Salt & Pepper
on 33rd St. Inc., 12 Civ. 6382, 2013 WL 4536628 at *2 (S.D.N.Y. Apr. 8, 2013); Fu v. Pop
Art Int'l, 10 Civ. 8562, 2011 WL 4552436 at *5 (S.D.N.Y. Sept. 19, 2011) (Peck, M.J.), R.
& R. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011);
Pineda-Herrera v. Da-Ar-Da, Inc., No. 09-CV-5140, 2011 WL 2133825 at *4-5 (E.D.N.Y.
May 26, 2011) ("[B]oth forms of damages seek to deter wage-and-hour violations.  Both do
so in a manner calculated to compensate the party harmed.  Because this Court finds no
persuasive basis to distinguish the two forms of damages, the Court will award the greater
of the two where both forms of damages are otherwise available for the same violations."
(citations omitted)); Jin v. Pac. Buffet House, Inc., No. CV-06-579, 2009 WL 2601995 at
*9 (E.D.N.Y. Aug. 24, 2009) (Rejecting double recovery because "[r]egardless of the
purpose, the award under the FLSA is four times the award under state law, and thus is more
(continued...)

not be awarded.[8]

        In keeping with the "prevailing view" as well as this Court's previous rulings that plaintiffs should not be awarded liquidated damages under both the FLSA and the NYLL for the same time period, Laboy is entitled to single liquidated damages at the 100% rate on his federal minimum wage and federal and state overtime claims.   Thus, Laboy is owed $17,428.59 in liquidated damages.  (See pages 8-10 above).

### D.   Spread of Hours Pay

        Under New York law, an "employee shall receive one hour's pay at the basic

---

[8]/    (...continued)
than sufficient to satisfy any punitive purpose the state law is intended to serve."); Chun Jie Yin v. Kim, No. 07 CV 1236, 2008 WL 906736 at *7 (E.D.N.Y. Apr. 1, 2008) ("[T]o the extent the 'liquidated damages' available under the FLSA can properly be characterized as compensation, it is apparent that the 'liquidated damages' available under the state statute compensates the exact same harm-namely, the harm caused by the defendant's culpable state of mind.  As a result, it would be improper to award [plaintiff] both forms of compensation for the same harm."); Pavia v. Around The Clock Grocery, Inc., No. 03 CV 6465, 2005 WL 4655383 at *8 n.13 (E.D.N.Y. Nov. 15, 2005) (New York Labor Law "provides for a payment of liquidated damages of 25% of all unpaid regular wages, including spread of hours wages.  As the Court has already recommended liquidated damages calculated under the FLSA for the unpaid minimum and overtime wages, [plaintiff] is only entitled to receive 25% of his spread of hours wages under state law.").

[9]/    Courts Shy Away From Treble Damages in Wage, Hour Suits, N.Y. Law Journal, Feb. 29, 2016 ("Over the past several years, the courts have reversed course from the initial bevy of federal and state court decisions applying 200 percent liquidated damages. Countless applications seeking 200 percent liquidated damages have since been denied by numerous judges who find such recoveries to be duplicative and unnecessary.  These courts continue to reason that '[b]oth forms of damages seek to deter wage-and-hour violations in a manner calculated to compensate the [plaintiff].'  Even judges that still apply both NYLL and FLSA liquidated damages together have noted the recent trend away from granting 200 percent liquidated damages.  In fact, in some instances judges have begun abrogating their own precedent, and now embrace the view that double liquidated damages under both the NYLL and FLSA are inappropriate given the similarities between both statutes.  Today, the prevailing view appears to be that applying liquidated damages remedies under both the NYLL and FLSA results in 'a windfall that neither the state nor the federal legislature appears explicitly to have intended.'").

minimum hourly wage rate, in addition to the minimum wage required [by New York's minimum wage law], for any day in which . . . the spread of hours exceeds 10 hours."  12 N.Y.C.R.R. § 142-2.4.  Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty."  12 N.Y.C.R.R. § 142-2.18.  Laboy is entitled to spread of hours pay for the entire employment period at issue.[10]

> To determine Laboy's unpaid spread of hours wages, Laboy's counsel multiplied the number of weeks in each period by the statutory minimum wage and the number of days in each week that Laboy worked in excess of ten hours.  (Dkt No. 27: Laboy Br. at 7.)  Thus, from December 1, 2011 through December 30, 2013, Laboy is entitled to $3,935.71 in spread of hours wages (108.57143 weeks x $7.25 x 5), and $1,994.29 from December 31, 2013 through December

---

[10]   Most courts in this Circuit have ruled that the spread of hours provision generally applies only to employees earning minimum wage.  See, e.g., Baltierra v. Advantage Pest Control Co., 14 Civ. 5917, 2015 WL 5474093 at *6-7 (S.D.N.Y. Sept. 18, 2015) (Peck, M.J.); Pinovi v. FDD Enters., Inc., 13 Civ. 2800, 2015 WL 4126872 at *5 (S.D.N.Y. July 8, 2015) ("[R]ecent case law has been nearly unanimous that the spread-of-hours requirement extends only to workers paid at the minimum wage level." (quotations omitted)); Fu v. Pop Art Int'l Inc., 10 Civ. 8562, 2011 WL 4552436 at *6 (S.D.N.Y. Sept. 19, 2011) (Peck, M.J.), R. & R. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011); Zubair v. EnTech Eng'g P.C., 808 F. Supp. 2d 592, 601 (S.D.N.Y. 2011) (New York's spread of hours provision "is properly limited to those employees who receive only the minimum compensation required by law."); Franklin v. Breton Int'l, Inc., 06 Civ. 4877, 2006 WL 3591949 at *4 (S.D.N.Y. Dec. 11, 2006) ("The 'spread of hours' provision in the New York regulations requires an additional hour's pay at the 'basic minimum hourly wage rate' for any day where the spread of hours in a day exceeds ten hours.  The provision, however, applies only to workers earning the minimum wage." (citation omitted)); Chan v. Triple 8 Palace, Inc., 03 Civ. 6048, 2006 WL 851749 at *21 (S.D.N.Y. Mar. 30, 2006) (Lynch, D.J.) ("The plain text of § [142-2.4] ensures an additional wage only 'in addition to the minimum wage' required under New York law (emphasis added).  It is therefore to be expected that the provision will not affect workers whose total weekly compensation is already sufficiently above the minimum rate.").  Because Laboy was paid below the minimum wage, he is entitled to spread of hours wages for the entire NYLL limitations period.

15, 2014 (49.857143 weeks x $8.00 x 5).  The Court agrees with Laboy's counsel's methodology and finds that Laboy is owed $5,930 in spread of hours wages.  (See Laboy Br. at 7.)[11/]

### E.    Retaliation Damages

Laboy claims that defendants terminated him in retaliation for his complaints about unpaid minimum and overtime wages and seeks back pay and liquidated damages as a result.  (Dkt. No. 1: Compl. ¶¶ 89-91; see page 3 above.)  The NYLL states that  "[n]o employer or his or her agent . . . shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter . . . ."  N.Y.L.L. § 215(1)(a).  "[W]here the person or entity in violation is an employer," the Court may "order[] rehiring or reinstatement of the employee to his or her former position with restoration of seniority or an award of front pay in lieu of reinstatement, and an award of lost compensation and damages, costs and reasonable attorneys' fees."  N.Y.L.L. § 215(2)(a).  "The court shall award liquidated damages to every employee aggrieved under this section, in addition to any other remedies permitted by this section" in an amount "not more than twenty thousand dollars."  Id.

"In order to state a claim under New York Labor Law Section 215, a plaintiff must adequately plead that while employed by the defendant, he or she made a complaint about the employer's violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result."  Higueros v. N.Y.S.

---

[11/]    While Laboy's complaint sought liquidated damages on his spread of hours claim (Dkt. No. 1: Compl. ¶ 88), he did not do so in his inquest submissions (Laboy Br. at 4-5).  Laboy accordingly should not be awarded these additional liquidated damages.

Catholic Health Plan, Inc., 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007) (citing cases).[12/]   An informal

complaint to an employer that the employer is violating a provision of the Labor Law suffices.  See,

e.g., Grant v. Abbott House, 2016 WL 796864 at *9; Castagna v. Luceno, 09 Civ. 9332, 2011 WL

1584593 at *12 (S.D.N.Y. Apr. 26, 2011), aff'd, 744 F.3d 254 & 558 F. App'x 19 (2d Cir. 2014); Yu

G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 263 (S.D.N.Y. 2008) (section 215 "covers

complaints by employees to their employer and not merely the institution of formal proceedings");

Higueros v. N.Y.S. Catholic Health Plan, Inc., 526 F. Supp. 2d at 347-48 (denying defendant's

motion to dismiss retaliation claim for "lack of sufficient specificity" where plaintiff alleged in the

complaint that she repeatedly complained to supervisors about the nonpayment of overtime wages

and that the defendant retaliated by terminating her).  "[P]laintiffs must show that they complained

about a specific violation of the Labor Law.  While an employee need not cite a specific statute, the

complaint to the employer must be of a colorable violation of the statute."  Mayer v. Neurological

Surgery, P.C., No. 15-CV-0864, 2016 WL 347329 at *3 (E.D.N.Y. Jan. 28, 2016); see also, e.g.,

Williams v. AAA S. New England, 13 Civ. 855, 2015 WL 864891 at *5 (S.D.N.Y. Mar. 2, 2015);

Landaeta v. N.Y. & Presbyterian Hosp., Inc., 12 Civ. 4462, 2014 WL 836991 at *8 (S.D.N.Y. Mar.

4, 2014); Figura v. N. Country Janitorial, Inc., 2016 WL 4705541 at *3.  Termination, of course,

constitutes an "adverse employment action" under § 215, as indicated by the statute's plain language.

See, e.g., Hai Ming Lu v. Jing Fong Rest., Inc., 503 F. Supp. 2d 706, 712 n.6 (S.D.N.Y. 2007)

(noting that "the majority of successful retaliation claims under N.Y. Labor Law § 215 are premised

---

[12/]      See also, e.g., Grant v. Abbott House, 14 Civ. 8703, 2016 WL 796864 at *9 (S.D.N.Y. Feb.
22, 2016); Jacob v. NYSARC, Inc., 13 Civ. 1677, 2014 WL 6750654 at *14 (S.D.N.Y. Dec.
1, 2014), appeal dismissed (Apr. 10, 2015); Belizaire v. RAV Investigative & Sec. Servs.
Ltd., 61 F. Supp. 3d 336, 354 (S.D.N.Y. 2014); Figura v. N. Country Janitorial, Inc., No.
62064, 2016 WL 4705541 at *3 (Sup. Ct. Warren Cty. Sept. 9, 2016).

on employment termination"); Higueros v. N.Y.S. Catholic Health Plan, Inc., 526 F. Supp. 2d at 347; Perez v. Jasper Trading, Inc., No. 05-CV-1725, 2007 WL 4441062 at *3 (E.D.N.Y. Dec. 17, 2007) ("[T]ermination of employment clearly constitutes prohibited retaliation" under § 215.).

As a preliminary matter, however, the NYLL retaliation provision states:  "At or before the commencement of any action under this section, notice thereof shall be served upon the attorney general by the employee." N.Y.L.L. § 215(2)(b).  There is no indication that Laboy served notice of this action on the Attorney General.  "[I]t appears that the New York Court of Appeals has not directly addressed the question of whether the requirement that pre-suit notice be provided to the State Attorney General should be construed as a strict 'condition precedent' to suit, or whether the requirement may be excused.  For their part, the lower state courts have issued conflicting decisions on the issue."  Robledo v. No. 9 Parfume Leasehold, 12 Civ. 3579, 2013 WL 1718917 at *8 (S.D.N.Y. Apr. 9, 2013) (citations omitted); see also, e.g., Figura v. N. Country Janitorial, Inc., 2016 WL 4705541 at *3 ("The issue has been considered by certain lower courts, but with conflicting results.  Federal courts have also disagreed on the issue." (citations omitted)).

Nonetheless, the Court agrees with the rationale of Robledo v. No. 9 Parfume Leasehold, 2013 WL 1718917 at *8; Quintanilla v. Suffolk Paving Corp., No. CV 09-5331, 2011 WL 1323033 at *6 (E.D.N.Y. Feb. 10, 2011), R. & R. adopted, 2011 WL 1253248 (E.D.N.Y. Mar. 28, 2011); and Figura v. N. Country Janitorial, Inc., 2016 WL 4705541 at *3.  Each case determined that § 215(2)(b) is not a prerequisite to suit, citing Columbia Gas of N.Y., Inc. v. N.Y.S. Elec. & Gas Corp., 28 N.Y.2d 117, 129, 320 N.Y.S.2d 57, 66 (1971).  In Columbia Gas, the Court of Appeals addressed N.Y. Gen. Bus. Law § 340(5), that states, in nearly identical language to § 215(2)(b): "At or before the commencement of any civil action by a party other than the attorney-general for a violation of this section, notice thereof shall be served upon the attorney-general."  N.Y. Gen. Bus.

Law § 340(5); see Columbia Gas of N.Y., Inc. v. N.Y.S. Elec. & Gas Corp., 33 A.D.2d 1057, 1058, 307 N.Y.S.2d 313, 316 (3d Dep't 1970).  The Court of Appeals held:

> [P]laintiff's failure to allege that notice of the commencement of this action had been given to the Attorney-General does not render the complaint defective.  The requirement that notice be given is designed solely 'to apprise the Attorney-General that such an action was commenced so that he would be aware of the circumstances'.  It may not be considered a condition precedent to the plaintiff's cause of action.

Columbia Gas of N.Y., Inc. v. N.Y.S. Elec. & Gas Corp., 28 N.Y.2d at 129, 320 N.Y.S.2d at 66 (citations omitted).  The Court is persuaded by the rationale of the cases above, particularly given the similarity between the notice provision in Columbia Gas and NYLL § 215(2)(b).  "In any event, in the case now before the Court, it would appear that Defendant[s], by [their] default, ha[ve] forfeited any argument that Plaintiff failed to serve the required notice on the attorney general."  Belizaire v. RAV Investigative & Sec. Servs. Ltd., 61 F. Supp. 3d at 355 n.16.  Laboy's retaliation claim thus should be considered on the merits.

Laboy's complaint and supporting affidavit allege that he complained about his unpaid wages, and was terminated shortly thereafter as a result.  (See page 3 above.)[13]  Having established a prima facie case under NYLL § 215 that defendants have made no attempt to rebut, Laboy is entitled to damages on his retaliation claim.

"Lost compensation" under § 215(2)(a) includes an award of back pay.  See, e.g., Belizaire v. RAV Investigative & Sec. Servs. Ltd., 61 F. Supp. 3d at 362.  Laboy seeks back pay from his termination date on December 16, 2014 to March 29, 2015 when he obtained employment at a higher rate of pay.  (Dkt. No. 27: Laboy Br. at 10; see page 3 above.)[14]

---

[13]    Prince and Maglio qualify as "employers" under the NYLL.  (See pages 43-44 below.)

[14]    Laboy's actual termination date was December 23, 2014, but he claims he did not work after

(continued...)

For the two-week period from December 16, 2014 through December 30, 2014, counsel calculated that Laboy would have earned $584 per week, i.e., forty hours of straight time at $8.00 per hour ($8.00 x 40 = $320) plus $12.00 per hour ($8.00 x 1.5) for twenty-two hours of overtime ($12.00 x 22 = $264).  (Laboy Br. at 10.)  Laboy would have earned a two-week total of $1,168.  (Id.)  On December 31, 2014 the minimum wage rose to $8.75, N.Y.L.L. § 652(1), and Laboy is entitled to back pay for 12.57143 weeks until March 29, 2015.  (Laboy Br. at 10; see page 3 above.)  Laboy would have earned $638.86 per week: forty hours of straight time at $8.75 per hour ($8.75 x 40 = $350) plus $13.13 per hour ($8.75 x 1.5) for twenty-two hours of overtime ($13.13 x 22 = $288.86).  (See Laboy Br. at 10.)[15]  Laboy would have earned $8,031.38 during this period.  Thus, Laboy should be awarded $9,199.38 in total back pay ($1,168 plus $8,031.38).[16]

Laboy also seeks liquidated damages of $20,000 (see Laboy Br. at 7)–the full amount permitted under the statute, N.Y.L.L. § 215(2)(a).  (See page 16 above.)  That amount is more than

---

[14]     (...continued)
December 15, 2014 when defendants told him not to return.  See, e.g., Belizaire v. RAV Investigative & Sec. Servs. Ltd., 61 F. Supp. 3d at 363 ("In this instance, though, it would be appropriate to back up, by one week, the start of the period for which back pay should be calculated, as Plaintiff testified that he received no wages after his last day on the job . . . .").

[15]     Laboy's counsel reached a slightly lower number by rounding up the hourly overtime rate to reach $13.13, but using a different figure in the total weekly underpayment calculation. (Laboy Br. at 10.)

[16]     There is no evidence that the gap in Laboy's employment was caused by his failure to mitigate his damages post-termination.  See, e.g., Cannon v. Douglas Elliman, LLC, 06 Civ. 7092, 2009 WL 2496032 at *3 (S.D.N.Y. Aug. 11, 2009); Tatar v. Elite Gold, Inc., 01 Civ. 2433, 2002 WL 31682391 at *2 (S.D.N.Y. Nov. 26, 2002).  Again, failure to mitigate is an affirmative defense that defendants have forfeited by defaulting.  See, e.g., Air Et Chaleur, S.A. v. Janeway, 757 F.2d 489, 494 (2d Cir. 1985); Morgenstern v. Cty. of Nassau, No. CV 04-58, 2009 WL 5103158 at *1 (E.D.N.Y. Dec. 15, 2009) ("An 'overwhelming majority of federal courts have decided, . . . that failure to mitigate damages is an affirmative defense,' and therefore, must be pleaded.").

the amount of Laboy's back pay. The Court thus should award Laboy statutory liquidated damages in the same amount as his back pay, i.e., $9,199.38.

### F.    NYCHRL Damages

Laboy seeks "no less than $25,000" in emotional distress damages under the NYCHRL because of defendants' racial discrimination and retaliation. (Dkt. No. 27: Laboy Br. at 11; see also Dkt. No. 1: Compl. ¶¶ 92-96.) Laboy claims that defendants' actions caused him an anxiety attack, depression, insomnia, weight loss, marital strain and low self-esteem, among other issues. (See page 3 above.)

The NYCHRL makes it unlawful "[f]or an employer or an employee or agent thereof, because of the actual or perceived . . . race, . . . color, [or] national origin, . . . to discharge from employment such person . . . [or to] discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C.H.R.L. § 8-107(1)(a). It also is discriminatory "for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." N.Y.C.H.R.L. § 8-107(7)(i). "The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment . . . provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity." N.Y.C.H.R.L. § 8-107(7).

An employer is liable for an employee's or agent's discrimination in three circumstances:

(1) the employee or agent exercised managerial or supervisory responsibility; or

(2) the employer knew of the employee's or agent's discriminatory conduct, and

  acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or superivsory responsibility; or

  (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

N.Y.C.H.R.L. § 8-107(13)(b).  Employers are subject to strict liability for the actions of employees with "managerial or supervisory responsibility." Zakrzewska v. New Sch., 14 N.Y.3d 469, 479-80, 902 N.Y.S.2d 838, 842-43 (2010); see also, e.g., Philip v. Gtech Corp., 14 Civ. 9261, 2016 WL 3959729 at *12 (S.D.N.Y. July 20, 2016); Dillon v. Ned Mgmt., Inc., 85 F. Supp. 3d 639, 657 (E.D.N.Y. 2015) (Weinstein, D.J.); Garrigan v. Ruby Tuesday, Inc., 14 Civ. 155, 2014 WL 2134613 at *6 (S.D.N.Y. May 22, 2014); McRedmond v. Sutton Place Rest. & Bar, Inc., 95 A.D.3d 671, 673, 945 N.Y.S.2d 35, 38 (1st Dep't 2012).

  "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'  Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 & 110 n.8 (2d Cir. 2013) (citations omitted).[17/]

---

[17/] See also, e.g., Ya-Chen Chen v. City Univ. of N.Y., 805 F.3d 59, 75 (2d Cir. 2015); Deshpande v. Medisys Health Network, Inc., No. 07CV375, 2010 WL 1539745 at *22 (E.D.N.Y. Apr. 16, 2010) ("claims under the NYCHRL are more liberally construed than claims under Title VII and the" New York State Human Rights Law), aff'd, 423 F. App'x 31 (2d Cir. 2011); Bennett v. Time Warner Cable, Inc., 138 A.D.3d 598, 599, 28 N.Y.S.3d 859 (1st Dep't 2016); Hudson v. Merrill Lynch & Co., 138 A.D.3d 511, 514, 31 N.Y.S.3d 3, 6-7 (1st Dep't 2016), leave to appeal denied, No. 2016-556, 2016 WL 4742476 (Sept. 13, 2016); Singh v. Covenant Aviation Sec., LLC, 131 A.D.3d 1158, 1161, 16 N.Y.S.3d 611, 615 (2d (continued...)

Under the NYCHRL, "the conduct's severity and pervasiveness are relevant only to the issue of damages.  To prevail on liability, the plaintiff need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent.  Indeed, the challenged conduct need not even be '"tangible" (like hiring or firing).'"  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d at 110 (citations omitted) (quoting Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 78-79, 872 N.Y.S.2d 27, 39-40 (1st Dep't 2009)); see also, e.g., Rogers v. B.N.Y. Mellon, 09 Civ. 8551, 2016 WL 4362204 at *9 (S.D.N.Y. Aug. 15, 2016); Garcia v. N.Y.C. Health & Hosps. Corp., 15 Civ. 2119, 2016 WL 4097850 at *7 (S.D.N.Y. July 26, 2016); Tulino v. City of N.Y., 15 Civ. 7106, 2016 WL 2967847 at *4 (S.D.N.Y. May 19, 2016) ("Significantly, the NYCHRL imposes liability for harassing conduct even if that conduct does not qualify as severe or pervasive . . . ." (quotations omitted)); Bell v. McRoberts Protective Agency, 15 Civ. 0963, 2016 WL 1688786 at *4 (S.D.N.Y. Apr. 25, 2016); Clarke v. InterContinental Hotels Grp., PLC, 12 Civ. 2671, 2013 WL 2358596 at *11 (S.D.N.Y. May 30, 2013) ("Under the NYCHRL, there are not separate standards for 'discrimination' and 'harassment' claims."); Hernandez v. Kaisman, 103 A.D.3d 106, 113-14, 957 N.Y.S.2d 53, 58 (1st Dep't 2012); Nelson v. HSBC Bank USA, 87 A.D.3d 995, 999, 929 N.Y.S.2d 259, 264 (2d Dep't 2011).  It remains true however, that the NYCHRL, like Title VII, does not protect against "petty slights or trivial inconveniences." Williams v. N.Y.C. Hous. Auth., 61 A.D.3d at 80, 872 N.Y.S.2d at 41.

---

[17]/     (...continued)
Dep't 2015); Bennett v. Health Mgmt. Sys., Inc., 92 A.D.3d 29, 40, 936 N.Y.S.2d 112, 120 (1st Dep't 2011) ("[I]t is essential to remember that the McDonnell Douglas evidentiary framework is not the only evidentiary framework applicable to discrimination cases.  It is not uncommon for covered entities to have multiple or mixed motives for their action, and the City HRL proscribes such 'partial' discrimination since '[u]nder Administrative Code § 8–101, discrimination shall play no role in decisions relating to employment . . . .'").

Laboy has established a prima facie case under the NYCHRL.  Laboy alleges that Prince and Maglio called him the N-word on a near daily basis throughout his employment, making it difficult to perform his job; when Laboy asked them to stop, he was terminated as a result.  (See page 2 above.)  These allegations suffice to support a claim for a hostile work environment and retaliatory discharge under the NYCHRL's broad remedial scheme.  See, e.g., La Grande v. DeCrescente Distrib. Co., 370 F. App'x 206, 210 (2d Cir. 2010) ("'[P]erhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as [the N-word] by a supervisor in the presence of his subordinates.'"); Philip v. Gtech Corp., 2016 WL 3959729 at *25 ("The Court therefore concludes that, under the more protective standards of New York City law, an African-American plaintiff's personal observation of his supervisor using the [N-word]–combined with other, secondhand evidence of racial bias–is sufficient for a reasonable jury to conclude that the plaintiff was subjected to more than mere 'petty slights or trivial inconveniences.'"); Kellman v. Metro. Transp. Auth., 8 F. Supp. 3d 351, 379-80 (S.D.N.Y. 2014).  Moreover, because defendants have defaulted, liability is established on that basis alone.  (See page 1 above.)  Defendant Office Equipment & Supply Corp. is liable for Prince and Maglio's actions given their managerial and supervisory responsibilities, including "the power to hire and fire employees," provide job assignments, set work schedules, and role as company principals.  (See page 3 above.)  Furthermore, Prince and Maglio are personally liable.

The NYCHRL imposes individual liability on those who "aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so." N.Y.C.H.R.L. § 8-107(6); see also, e.g., Makinen v. City of N.Y., 11 Civ. 07535, ---F. Supp. 3d----, 2016 WL 880194 at *6 (S.D.N.Y. 2016); Magnotti v. Crossroads Healthcare Mgmt. LLC, No.

14CV6679, 2016 WL 3080801 at *2 (E.D.N.Y. May 27, 2016); <u>Tulino</u> v. <u>City of N.Y.</u>, 15 Civ.

7106, 2016 WL 2967847 at *5 (S.D.N.Y. May 19, 2016).  Analyzing the identical aiding and

abetting provision of the New York State Human Rights Law, <u>see</u> N.Y. Exec. Law § 296(6), the

Second Circuit held that "an individual defendant may be held liable under the aiding and abetting

provision . . . if he 'actually participates in the conduct giving rise to a discrimination claim.'" <u>Rojas</u>

v. <u>Roman Catholic Diocese of Rochester</u>, 660 F.3d 98, 107 n.10 (2d Cir. 2011), <u>cert. denied</u>, 132

S. Ct. 1744 (2012); <u>see also</u>, <u>e.g.</u>, <u>Griffin</u> v. <u>Sirva Inc.</u>, No. 15-1307, 2016 WL 4524466 at *9 (2d

Cir. Aug. 30, 2016).  "The same standards of analysis used to evaluate aiding and abetting claims

under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws

is 'virtually identical.'" <u>Feingold</u> v. <u>New York</u>, 366 F.3d 138, 158 (2d Cir. 2004).[18]

      Moreover, the NYCHRL imposes liability for the discriminatory actions of "an

employer or an employee or agent thereof." N.Y.C.H.R.L. § 8-107(1)(a); <u>see</u>, <u>e.g.</u>, <u>Holt</u> v. <u>Dynaserv</u>

<u>Indus., Inc.</u>, 14 Civ. 8299, 2016 WL 5108205 at *11 (S.D.N.Y. Sept. 19, 2016); <u>Philip</u> v. <u>Gtech</u>

<u>Corp.</u>, 2016 WL 3959729 at *12; <u>Makinen</u> v. <u>City of N.Y.</u>, 2016 WL 880194 at *6; <u>Salazar</u> v.

<u>Ferrara Bros. Bldg. Materials Corp.</u>, No. 13-CV-3038, 2015 WL 1535698 at *11 (E.D.N.Y. Apr. 6,

2015); <u>Dillon</u> v. <u>Ned Mgmt., Inc.</u>, 85 F. Supp. 3d 639, 658 (E.D.N.Y. 2015) (Weinstein, D.J.).

      Prince and Maglio are individually liable, whether under an aiding or abetting theory

or § 8-107(1).  Each racially discriminated against Laboy, and held a supervisory role with the

"power to hire and fire employees," provided Laboy his job assignments, set his schedule, and paid

him.  (<u>See</u> page 3 above.)  Moreover, liability is established by their default.  (<u>See</u> page 1 above.)

---

[18]    Accord, <u>e.g.</u>, <u>Motta</u> v. <u>Glob. Contract Servs. Inc.</u>, 15 Civ. 8555, 2016 WL 1611489 at *2 (S.D.N.Y. Apr. 21, 2016), <u>appeal dismissed</u> (June 22, 2016); <u>Graciani</u> v. <u>Patients Med., P.C.</u>, No. 13-CV-2751, 2015 WL 5139199 at *25 (E.D.N.Y. Sept. 1, 2015).

The Court proceeds to the question of whether $25,000 is a reasonable award under the circumstances.

Under the NYCHRL, "a plaintiff's recovery of damages for mental anguish is limited to compensation for actual and proven injury." Makinen v. City of N.Y., 2016 WL 880194 at *8. "Damages for emotional distress . . . cannot be assumed simply because discrimination has occurred." MacMillan v. Millennium Broadway Hotel, 873 F. Supp. 2d 546, 560 (S.D.N.Y. 2012). Rather, a damages award must be supported by "competent evidence":

> A plaintiff's subjective testimony, standing alone, is generally insufficient to sustain an award of emotional distress damages. Rather, the plaintiff's testimony of emotional injury must be substantiated by other evidence that such an injury occurred, such as the testimony of witnesses to the plaintiff's distress, or the objective circumstances of the violation itself. Evidence that a plaintiff has sought medical treatment for the emotional injury, while helpful, is not required . . . [nor are] physical symptoms of emotional distress.

Patrolmen's Benevolent Ass'n of City of N.Y. v. City of N.Y., 310 F.3d 43, 55-56 (2d Cir. 2002), cert. denied, 538 U.S. 1032, 123 S. Ct. 2076 (2003) (citations omitted); see also, e.g., Cullen v. Nassau Cty. Civil Serv. Comm'n, 53 N.Y.2d 492, 497, 442 N.Y.S.2d 470, 473 (1981) ("The record must contain proof that the complainant in fact suffered mental anguish or humiliation, which may be established through the testimony of the complainant alone." (citations omitted)); N.Y.S. Div. of Human Rights v. Caprarella, 82 A.D.3d 773, 775, 917 N.Y.S.2d 704, 707 (2d Dep't 2011); Argyle Realty Assocs. v. N.Y.S. Div. of Human Rights, 65 A.D.3d 273, 284, 882 N.Y.S.2d 458, 467 (2d Dep't 2009). The decision whether to award such damages thus often will involve "not only determinations of fact but also the consideration of subjective and intangible factors properly left to the sound discretion of the factfinder, here the court." Cowan v. Prudential Ins. Co. of Am., 852 F.2d 688, 690 (2d Cir. 1988).

New York and federal courts look to comparable cases to help determine whether a

given award is excessive.  See, e.g., Stampf v. Long Island R. Co., 761 F.3d 192, 204 (2d Cir. 2014); Dixon v. Agbai, 15 Civ. 850, 2016 WL 3702749 at *4 (S.D.N.Y. July 8, 2016) (Peck, M.J.); Nivar v. Sadler, 13 Civ. 7141, 2016 WL 3647957 at *2 (S.D.N.Y. July 1, 2016); Nipon v. The Yale Club of N.Y.C., 13 Civ. 1414, 2016 WL 1060843 at *2 (S.D.N.Y. Mar. 17, 2016).  The Court has surveyed comparable discrimination cases, including the following:

- Johnson v. Strive E. Harlem Emp't Grp., 990 F. Supp. 2d 435, 442-43, 456-57 (S.D.N.Y. 2014) (awarding $80,000 where plaintiff's supervisor "'call[ed] [her the N-word]' and implied that she was 'low class,'" plaintiff was terminated in retaliation for her complaints of race discrimination, saw two therapists as a result, and "suffered from reduced confidence, [became] a less effective parent, and sometimes need[ed] to 'muster up the energy to get [herself] together' just to get out of bed");

- MacMillan v. Millennium Broadway Hotel, 873 F. Supp. 2d 546, 551-52, 561-63 (S.D.N.Y. 2012) (reducing $125,000 award to $30,000 where plaintiff testified that supervisor "'allow[ed] an atmosphere where you're called the 'N' word all the time' by coworkers," employee hung a "black voodoo doll" with a noose around its neck in a manner that "evoked a lynching," but there was "no evidence that [plaintiff] ever sought medical or psychological treatment, that he missed work, that he had any difficulty sleeping, that he lost his appetite, or that his alleged emotional distress had any physical manifestation or disrupted other aspects of his daily life," and "[h]e remained at work throughout the period of alleged discriminatory acts");

- Holness v. Nat'l Mobile Television, Inc., No. 09 CV 2601, 2012 WL 1744847 at *5 (E.D.N.Y. Feb. 14, 2012) (awarding $50,000 where "plaintiff receive[d] few work assignments despite his experience, . . . supervisors made discriminatory comments to him such as, '[y]ou're a slave and I'd rather work and be placed in the bathroom than to be working with you,'" was under the care of a psychologist, and "had an emotional breakdown with severe physical manifestations (including chest pains)"), R. & R. adopted as modified on other grounds, 2012 WL 1744744 (E.D.N.Y. May 15, 2012);

- N.Y.S. Div. of Human Rights v. A.R. Heflin Painting Contractor, Inc., 101 A.D.3d 1442, 1442-46, 956 N.Y.S.2d 666, 668-71 (3d Dep't 2012) (upholding $15,000 award to employee who, during his five years with defendant employer, was repeatedly subjected to racial insults and "inappropriate physical contact," and constructively discharged as a result);

- <u>Gold Coast Rest. Corp.</u> v. <u>Gibson</u>, 67 A.D.3d 798, 798-800, 888 N.Y.S.2d 186, 186-89 (2d Dep't 2009) (reducing $50,000 award to $25,000 where "the only evidence of the complainant's mental anguish was his testimony and that of his sister . . . that as a result of the [racially] hostile work environment he felt 'hurt,' 'angry,' and 'frustrated' and became 'somewhat depressed,' 'emotional,' 'withdrawn,' and 'traumatized' . . . [and] [t]here were no physical manifestations of the complainant's anguish, and he did not seek out a medical professional");

- <u>AMR Servs. Corp.</u> v. <u>N.Y.S. Div. of Human Rights</u>, 11 A.D.3d 609, 609-10, 783 N.Y.S.2d 61, 61-62 (2d Dep't 2004) (reducing $100,000 award to $50,000 where employee was demoted and terminated because of his race and "testified that he was 'extremely depressed' as a result of his termination," but later diagnosis of "'major depressive disorder'" was only partly attributable to employer's actions);

- <u>N.Y.S.  Dep't of Corr. Servs.</u> v. <u>N.Y.S. Div. of Human Rights</u>, 225 A.D.2d 856, 856-59, 638 N.Y.S.2d 827, 829-31 (3d Dep't 1996) (reducing $100,000 award to $35,000 where employer "unlawfully discriminated against [plaintiff correction officer] by allowing one of his supervisors, over a 24–month period, to treat him with racial animosity by, <u>inter alia</u>, repeatedly verbally harassing and humiliating him in front of other correction officers, civilian bus drivers and prisoners; by actively pressuring him to violate regulations; and, on two separate transportation assignments, humiliated and degraded [plaintiff] by ordering him to sit with the prisoners for periods of 12 and 15 hours, when the regulations require rotation of correction officers in such situations every 30 minutes," but record was "devoid of any proof of the severity, the consequences and the duration of the effects which the supervisor's negative conduct had on" the plaintiff);

- <u>Cosmos Forms, Ltd.</u> v. <u>State Div. of Human Rights</u>, 150 A.D.2d 442, 442, 541 N.Y.S.2d 50, 51 (2d Dep't 1989) (reducing $35,000 award to $5,000, "notwithstanding the constant and blatant nature of the racial discrimination against" the plaintiff, "where the sole evidence of mental anguish was the complainant's own testimony that she was '[e]motionally and physically screwed up'")

Laboy's allegations that he suffered an anxiety attack, loss of appetite, insomnia, depression, mental strain and low self-esteem are, for the most part, generic and standing alone would not support a substantial award of emotional distress damages.  There is no evidence that Laboy sought psychological or other medical treatment as a result of defendants' actions, nor any

indication of the duration of the negative consequences.  On the other hand, the objective circumstances of Laboy's treatment are disturbing, to say the least.  Laboy states that he regularly was referred to as the N-word over a lengthy period of time.  "Even one racial epithet is inexcusable."  Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 310, 786 N.Y.S.2d 382, 394 (2004).

Considering the limited record of Laboy's emotional distress together with the egregious discrimination he suffered, Laboy should be awarded the $25,000 he requested in emotional distress damages.  This figure is well within the range of awards in comparable cases and appropriately compensates Laboy for "garden variety" emotional distress.  See, e.g., Makinen v. City of N.Y., 2016 WL 880194 at *14 ("'Awards for 'garden-variety' emotional distress, where the evidence of the harms comes from plaintiff's testimony alone, vary widely in amount but are typically lower than those in other cases.  In the Second Circuit, 'garden variety' emotional distress claims generally merit $30,000 to $125,000 awards.'"); Bouveng v. NYG Capital LLC, 14 Civ. 5474, 2016 WL 1312139 at *38 (S.D.N.Y. Mar. 31, 2016) (same), appeal withdrawn (July 29, 2016); Drice v. My Merch. Servs., LLC, No. CV2015-0395, 2016 WL 1266866 at *7 (E.D.N.Y. Mar. 4, 2016) ("For garden variety emotional distress claims, courts have awarded damages ranging from $5,000 to $35,000."), R. & R. adopted, 2016 WL 1266948 (E.D.N.Y. Mar. 31, 2016); Najnin v. Dollar Mountain, Inc., 14 Civ. 5758, 2015 WL 6125436 at *3 (S.D.N.Y. Sept. 25, 2015) (same).

### G.   **Prejudgment Interest**

Laboy seeks prejudgment interest on his NYLL claims for unpaid overtime (Compl. ¶¶ 73, 84), spread of hours (Compl. ¶ 88), and retaliation damages (Compl. ¶ 91), at a rate of nine percent per annum calculated from the midpoint of his employment (Dkt. No. 27: Laboy Br. at

12).[19]

   The Second Circuit has held that even where a plaintiff is awarded liquidated damages under the NYLL, prejudgment interest still is appropriate.  See, e.g., Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999), cert. denied, 528 U.S. 1119, 120 S. Ct. 940 (2000); Begum v. Ariba Disc., Inc., 12 Civ. 6620, 2015 WL 223780 at *3 (S.D.N.Y. Jan. 16, 2015); McClean v. Garage Mgmt. Corp., 09 Civ. 9325, 10 Civ. 3950, 2012 WL 1358739 at *10 (S.D.N.Y. Apr. 12, 2012) ("Because NYLL liquidated damages and prejudgment interest 'serve fundamentally different purposes', the Court of Appeals has observed that plaintiffs may recover both for the same unpaid wages."); Olvera v. New Ko-Sushi, 10 Civ. 4643, 2011 WL 724699 at *5 (S.D.N.Y. Feb. 16, 2011).  This is because "'[p]re-judgment interest and liquidated damages under the [New York] Labor Law are not functional equivalents.'"  Fu v. Pop Art Int'l, Inc., 10 Civ. 8562, 2011 WL 6092309 at *2 (S.D.N.Y. Dec. 7, 2011) (quoting Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d at 265). In his brief, however, Laboy's counsel provides no interest calculations other than for interest that accrued on Laboy's minimum wage and overtime claims (Laboy Br. at 4), even though no interest is awarded for those wages under the FLSA alongside liquidated damages (see page 30 n.19).  The

---

[19] Interest is not awarded under the FLSA, as interest is assumed to be included under liquidated compensatory damages.  See, e.g., Brock v. Superior Care, Inc., 840 F.2d 1054, 1065 (2d Cir. 1988) ("It is well settled that in an action for violations of the Fair Labor Standards Act prejudgment interest may not be awarded in addition to liquidated damages."); Paz v. Piedra, 09 Civ. 3977, 2011 WL 121103 at *13 (S.D.N.Y. Jan. 12, 2012); Fu v. Pop Art Int'l Inc., 2011 WL 6092309 at *2.  For that reason, courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA.  See, e.g., Tackie v. Keff Enters. LLC, 14 Civ. 2074, 2014 WL 4626229 at *5 & n.5 (S.D.N.Y. Sept. 16, 2014) ("[P]laintiffs are entitled to prejudgment interest on any compensatory damages awarded under the NYLL for which there is no corresponding award of liquidated damages under FLSA."); Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 321-22 (S.D.N.Y. 2014).  Accordingly, Laboy is not entitled to prejudgment interest on his FLSA minimum or overtime wages, for which liquidated damages were awarded.  (See page 14 above.)

Court accordingly calculates prejudgment interest on Laboy's NYLL overtime claims that accrued between December 1, 2011 through April 29, 2012, and December 31, 2013 through December 15, 2014.  (See pages 8-9 above.)

The statutory interest rate in New York of nine percent, C.P.L.R. § 5004, is applicable to Laboy's NYLL overtime claim.  Because these damages accrued at different times, interest is calculated pursuant to C.P.L.R. § 5001(b) ("Where . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.").[20]  The approximate midpoint between the date Laboy allegedly began work with defendants on December 1, 2011 and the first day of the FLSA limitations period on April 29, 2012, is February 13, 2012. (See page 6 above.)  1691 days passed from February 13, 2012 to September 29, 2016, the date of this Report and Recommendation. At a rate of nine percent simple interest per year on the total amount of $1,897.49 (see page 9 above), defendants owe Laboy $777.86 in prejudgment interest, plus continuing prejudgment interest through to the date of judgment at a rate of $.46 per day.[21]

The approximate midpoint between December 31, 2013 and December 15, 2014 is June 23, 2014.  830 days passed from June 23, 2014 to September 29, 2016.  At a rate of nine percent simple interest per year on the total amount of $5,210.07 (see page 10 above), defendants owe Laboy $1,062.40 in additional prejudgment interest, plus continuing prejudgment interest

---

[20]   Prejudgment interest applies only to unpaid wages and not also to the NYLL liquidated damages on those wages.  See, e.g., Janus v. Regalis Constr., Inc., 11-CV-5788, 2012 WL 3878113 at *8 (E.D.N.Y. July 23, 2012), R. & R. adopted, 2012 WL 3877963 (Sept. 4, 2012); Chan v. Sung Yue Tung Corp., 03 Civ. 6048, 2007 WL 1373118 at *10 (S.D.N.Y. May 8, 2007) (Lynch, D.J.).

[21]   Nine percent of $1,897.49 equals $170.77 which, when divided by 365, results in an interest rate of approximately $.46 per day.

through to the date of judgment at a rate of $1.28 per day.[22]

### G.   Attorneys' Fees and Costs

Under the FLSA, NYLL and NYCHRL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs.  29 U.S.C. § 216(b); N.Y. Labor Law § 663(1); N.Y.C.H.R.L. § 8-502(g); accord, e.g., Young v. Cooper Cameron Corp., 586 F.3d 201, 208 (2d Cir. 2009) ("The FLSA provides that a court 'shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'"); Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 151 (2d Cir. 2008) ("In addition to providing for liquidated damages, the FLSA directs courts to award prevailing plaintiffs reasonable attorney's fees and costs."); Tate v. Levy Rest. Holdings, LLC, 150 F. Supp. 3d 245, 249 (E.D.N.Y. 2015); Echevarria v. Insight Med., P.C., 102 F. Supp. 3d 511, 514 (S.D.N.Y. 2015); Imbeault v. Rick's Cabaret Int'l Inc., 08 Civ. 5458, 2009 WL 2482134 at *1 (S.D.N.Y. Aug. 13, 2009) (Lynch, D.J.) ("Both the FLSA and the NYLL provide that a prevailing plaintiff may seek an award of reasonable attorneys' fees and costs, to be paid by the defendants.").[23]

---

[22]   Nine percent of $5,210.07 equals $468.90 which, when divided by 365, results in an interest rate of approximately $1.28 per day.

[23]   See also, e.g., Garcia v. Jambox, Inc., 14 Civ. 3504, 2015 WL 2359502 at *2 (S.D.N.Y. Apr. 27, 2015) ("The FLSA and the NYLL grant prevailing plaintiffs their attorney's fees 'to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" (quoting Aguilera v. Cookie Panache, 13 Civ. 6071, 2014 WL 2115143 at *2 (S.D.N.Y. May 20, 2014))); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011) (Peck, M.J.) ("Under the FLSA and N.Y. Labor Law, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs."); Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 473 (S.D.N.Y. 2009) ("In an action pursuant to the FLSA, a 'prevailing party' must be awarded reasonable attorneys' fees and costs . . . .  Likewise, the NYLL requires that '[i]n any action . . . in which the employee prevails, the court shall allow such employee reasonable attorney's fees . . . .'" (citations omitted)).

1.      **Costs**

Laboy seeks $520 in costs, representing a $400 filing fee and $120 for service of process.  (Ex. I: Costs Chart; Dkt. No. 27: Laboy Br. at 21.)  Counsel's request for costs is not supported by any documentation aside from a list of expenditures.  (See Ex. I: Costs Chart.)  The Court takes judicial notice of the Court filing fee of $400; in the absence of supporting documentation as to any further costs, only $400 is recoverable.  E.g., Baltierra v. Advantage Pest Control Co., 14 Civ. 5917, 2015 WL 5474093 at *12 (S.D.N.Y. Sept. 18, 2015) (Peck, M.J.); Carrasco v. W. Village Ritz Corp., 11 Civ. 7843, 2012 WL 2814112 at *7 (S.D.N.Y. July 11, 2012) (Peck, M.J.), R. & R. adopted, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012); Fu v. Pop Art Int'l Inc., 10 Civ. 8562, 2011 WL 4552436 at *5 (S.D.N.Y. Sept. 19, 2011 ) (Peck, M.J.), R. & R. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011).  Accordingly, Laboy should be awarded $400 in costs.

2.      **Attorneys' Fees**

Laboy requests $34,966.75 in attorneys' fees for the work of two attorneys and one paralegal.[24]  (Laboy Br. at 20.)  Laboy seeks an hourly rate of $375 for attorney Delmas Costin, who has been practicing law since 2000 and has operated his own law firm since 2007.  (Laboy Br. at 13-14.)  Since 2011, Mr. Costin's primary practice area has been employment law.  (Id. at 14.)  Laboy seeks $300 per hour for attorney Nadia Okraku who was admitted to the New York bar in 2010.  (Id. at 17.)  Ms. Okraku graduated from law school in 2000 in the UK, where she practiced law for over ten years, primarily in the area of employment law, before her admission to the New York bar.  (Ex.

---

[24]     Counsel incorrectly added the amounts incurred to reach a total figure of $29,399.25. (Laboy Br. at 20.)  It is clear from the submissions, however, that Laboy seeks the full amount noted in text.

34

G: Okraku Aff. ¶¶ 4, 6, 10.)  Ms. Okraku relocated to New York in 2012, and from April 2013 to

present has been of counsel at Mr. Costin's law firm.  (Id. ¶¶ 11-13.)  Laboy further seeks $100 per

hour for paralegal Raquel Urena.  (Laboy Br. at 18.)

Traditionally, "[i]n determining a fee award, the typical starting point is the so-called

lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by

a reasonable hourly rate.'"  Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v.

Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)).[25/]  Particularly in awarding statutory

attorneys' fees, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry.

There remain other considerations that may lead the district court to adjust the fee upward or

downward . . . ."  Hensley v. Eckerhart, 461 U.S. at 434, 103 S. Ct. at 1940; see also, e.g., Arbor Hill

Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 186 (2d Cir. 2008)

("[T]he lodestar method involved two steps: (1) the lodestar calculation; and (2) adjustment of the

lodestar based on case-specific considerations."); Lane Crawford LLC v. Kelex Trading (CA) Inc.,

12 Civ. 9190, 2013 WL 6481354 at *6 (S.D.N.Y. Dec. 3, 2013) (Peck, M.J.), R. & R. adopted, 12

Civ. 9190, 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014).

In April 2010, the Supreme Court revisited the issue of attorneys' fees and approved

of the "lodestar" approach over the more discretionary approach of Johnson v. Georgia Highway

Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), holding:

> Although the lodestar method is not perfect, it has several important virtues.
> First, in accordance with our understanding of the aim of fee-shifting statutes, the
> lodestar looks to "the prevailing market rates in the relevant community."
> Developed after the practice of hourly billing had become widespread, the lodestar

_____

[25/]   The Second Circuit requires contemporaneous time records as a prerequisite for awarding
attorneys' fees. E.g., N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147
(2d Cir. 1983).

method produces an award that <u>roughly</u> approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.  Second, the lodestar method is readily administrable, and unlike the <u>Johnson</u> approach, the lodestar calculation is "objective," and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

III

Our prior decisions concerning the federal fee-shifting statutes have established six important rules that lead to our decision in this case.

First, a "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. . . .

Second, the lodestar method yields a fee that is presumptively sufficient to achieve this objective.  Indeed, we have said that the presumption is a "strong" one.

Third, although we have never sustained an enhancement of a lodestar amount for performance, we have repeatedly said that enhancements may be awarded in "'rare'" and "'exceptional'" circumstances.

Fourth, we have noted that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation.  We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors "presumably [are] fully reflected in the number of billable hours recorded by counsel."  We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar "[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate."

Fifth, the burden of proving that an enhancement is necessary must be borne by the fee applicant.

Finally, a fee applicant seeking an enhancement must produce "specific evidence" that supports the award.  This requirement is essential if the lodestar method is to realize one of its chief virtues, <u>i.e.</u>, providing a calculation that is objective and capable of being reviewed on appeal.

<u>Perdue</u> v. <u>Kenny A.</u>, 559 U.S. 542, 551-53, 130 S. Ct. 1662, 1672-73 (2010) (citations omitted).[26/]

---

[26/]     Although the Supreme Court's <u>Perdue</u> opinion appeared to cast doubt on the viability of the
(continued...)

As the fee applicant, plaintiff "bears the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed."  General Elec. Co. v. Compagnie Euralair, S.A., 96 Civ. 0884, 1997 WL 397627 at *4 (S.D.N.Y. July 3, 1997) (Scheindlin, D.J. & Peck, M.J.).[27/]

### a.    Reasonable Hourly Rate

"Courts in this District have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450."  Gurung v. Malhotra, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012); see, e.g., Long v. HSBC USA Inc., 14 Civ. 6233, 2016 WL 4764939 at *10 (S.D.N.Y. Sept. 13, 2016) ("Although courts in this district have

---

[26/]    (...continued)
Second Circuit's 2008 opinion in Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d at 190, which relied on, among other factors, the Johnson factors, Arbor Hill remains the standard in this Circuit.  See, e.g., Hui Luo v. L & S Acupuncture, P.C., No. 15-1892-CV, 2016 WL 2848646 at *2 (2d Cir. May 16, 2016); Gortat v. Capala Bros., Inc., 621 F. App'x 19, 22 (2d Cir. 2015) (reviewing attorneys' fee award under Arbor Hill and Johnson factors); K.L. v. Warwick Valley Cent. Sch. Dist., 584 F. App'x 17, 18 (2d Cir. 2014) ("In determining an appropriate hourly rate, 'the district court should consider, among others, the Johnson factors.'" (quoting Arbor Hill)); Torres v. Gristede's Operating Corp., 519 F. App'x 1, 3-4 (2d Cir. 2013).  In any event, the result would not differ here under either approach.

[27/]    Accord, e.g., Charles v. City of N.Y., 13 Civ. 3547, 2014 WL 4384155 at *3 (S.D.N.Y. Sept. 4, 2014); Boutros v. JTC Painting & Decorating Corp., 12 Civ. 7576, 2014 WL 3925281 at *4 (S.D.N.Y. Aug. 8, 2014); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011) (Peck, M.J.); N.Y. City Dist. Council of Carpenters v. Rock-It Contracting, Inc., 09 Civ. 9479, 2010 WL 1140720 at *2 (S.D.N.Y. Mar. 26, 2010) (Peck, M.J.), R. & R. adopted, 2010 WL 1558568 (S.D.N.Y. Apr. 19, 2010); Cablevision Sys. N.Y.C. Corp. v. Torres, 02 Civ. 7602, 2003 WL 22078938 at *5 (S.D.N.Y. Sept. 9, 2003) (Peck, M.J.); Sowemimo v. D.A.O.R. Sec., Inc., 97 Civ. 1083, 2000 WL 890229 at *3 (S.D.N.Y. June 30, 2000), aff'd, 1 F. App'x 82 (2d Cir. 2001); Lavin-McEleney v. Marist Coll., 96 Civ. 4081, 1999 WL 33500070 at *3 (S.D.N.Y. Sep. 28, 1999), aff'd, 239 F.3d 476 (2d Cir. 2001); N.S.N. Int'l Indus. N.V. v. E. I. DuPont de Nemours & Co., 89 Civ. 1692, 1996 WL 154182 at *2 (S.D.N.Y. Apr. 3, 1996) (Peck, M.J.); see, e.g., Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983).

occasionally awarded hourly rates of $550 and $600 to experienced senior litigators, FLSA litigators are rarely awarded over $450 per hour."); Xochimitl v. Pita Grill of Hell's Kitchen, Inc, 14 Civ. 10234, 2016 WL 4704917 at *20 (S.D.N.Y. Sept. 8, 2016); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 514 (S.D.N.Y. 2011) (Peck, M.J.) (approving partner's $450 hourly rate as "consistent with rates awarded by the courts in other FLSA or similar statutory fee cases." (citing cases)).

   While Mr. Costin's rate is within the range awarded to attorneys with over fifteen years of experience, Ms. Okraku's rate is slightly higher than that awarded to less senior associates in this District.  See, e.g., Siegel v. Bloomberg L.P., 13 Civ. 1351, 2016 WL 1211849 at *6 (S.D.N.Y. Mar. 22, 2016) (awarding $275 per hour to attorney with six years of experience, and $350 to attorney with thirteen years of experience); Kernes v. Glob. Structures, LLC, 15 Civ. 00659, 2016 WL 880199 at *10 (S.D.N.Y. Mar. 1, 2016) (awarding $250 per hour to third-year associate); Guaman v. J & C Top Fashion, Inc., 14 Civ. 8143, 2016 WL 791230 at *10 (S.D.N.Y. Feb. 22, 2016) (awarding $275 per hour to attorney with "less than 9 years of practice" and $175 to two attorneys who had graduated law school in 2013 and 2014, respectively); Cordova v. D & D Rest., Inc., 14 Civ. 8789, 2015 WL 6681099 at *9 (S.D.N.Y. Oct. 29, 2015) (awarding $400 per hour to attorney with eighteen years of experience).[28/]  Nonetheless, the Court cannot completely discount Ms. Okraku's ten years as a UK attorney, during which she undoubtedly developed skills

---

[28/]  See also, e.g., Koszkos v. Janton Indus., Inc., No. 15-CV-1700, 2016 WL 4444329 at *8 (E.D.N.Y. Aug. 3, 2016) (awarding $200 per hour to attorneys with five years of experience and $175 to attorney with two years of experience), R. & R. adopted, 2016 WL 4444782 (E.D.N.Y. Aug. 23, 2016); Alvarez v. 894 Pizza Corp., No. 14-CV-6011, 2016 WL 4536574 at *7 (E.D.N.Y. Aug. 2, 2016) (awarding $400 to partner with eighteen years of experience, and $300 to attorney with twelve years of experience), R. & R. adopted, 2016 WL 4540817 (E.D.N.Y. Aug. 30, 2016); Saldana v. New Start Grp., Inc., No. 14CV4049, 2016 WL 3683530 at *3 (E.D.N.Y. July 6, 2016) (awarding $400 per hour to "solo practitioner with almost 20 years of experience and 14 years of experience in the area of labor and employment law" and $300 to solo practitioner with seven years of experience).

transferrable to her practice in the United States.  The Court accordingly approves the rates sought:

Mr. Costin should be awarded $375 per hour and Ms. Okraku $300 per hour.

   "As to the requested fees for paralegal work, in recent FLSA actions, hourly rates

between $100 and $150 for paralegal work have been found to be reasonable." <u>Long</u> v. <u>HSBC USA</u>

<u>Inc.</u>, 2016 WL 4764939 at *11 (citing cases); <u>see also</u>, <u>e.g.</u>, <u>In re Doria/Memon Disc. Stores Wage</u>

<u>& Hour Litig.</u>, 14 Civ. 7990, 2016 WL 3963170 at *2 (S.D.N.Y. July 22, 2016); <u>Cortes</u> v. <u>New</u>

<u>Creators, Inc.</u>, 15 Civ. 5680, 2016 WL 3455383 at *7 (S.D.N.Y. June 20, 2016).  Laboy should be

awarded the sought amount of $100 per hour for any paralegal work.

### b.  <u>Time Reasonably Expended</u>

   In determining whether the amount of hours billed is reasonable, "the court takes

account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" <u>Bliven</u>

v. <u>Hunt</u>, 579 F.3d 204, 213 (2d Cir. 2009) (quoting <u>Hensley</u> v. <u>Eckerhart</u>,  461 U.S. 424, 434, 103

S. Ct. 1933, 1939-40 (1983)).[29/]  "In so doing, 'the district court does not play the role of an

uninformed arbiter but may look to its own familiarity with the case and its experience generally as

well as to the evidentiary submissions and arguments of the parties.'" <u>Bliven</u> v. <u>Hunt</u>, 579 F.3d at

213.[30/]  "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney

would have engaged in similar time expenditures.'" <u>Cesario</u> v. <u>BNI Constr., Inc.</u>, 07 Civ. 8545, 2008

WL 5210209 at *7 (S.D.N.Y. Dec. 15, 2008) (quoting <u>Grant</u> v. <u>Martinez</u>, 973 F.2d 96, 99 (2d Cir.

---

[29/]  <u>Accord</u>, <u>e.g.</u>, <u>Sheet Metal Workers' Nat'l Pension Fund</u> v. <u>Coverex Corp. Risk Solutions</u>, No. 09-CV-121, 2015 WL 3444896 at *12 (E.D.N.Y. May 28, 2015);  <u>Abdell</u> v. <u>City of N.Y.</u>, 05 Civ. 8453, 2015 WL 898974 at *2 (S.D.N.Y. Mar. 2, 2015); <u>Deng</u> v. <u>278 Gramercy Park Grp. LLC</u>, 12 Civ. 7803, 2014 WL 1016853 at *12 (S.D.N.Y. Mar. 14, 2014), <u>R. & R. adopted</u>, 2014 WL 4996255 (S.D.N.Y. Oct. 7, 2014).

[30/]  <u>Accord</u>, <u>e.g.</u>, <u>Dominguez</u> v. <u>B S Supermarket, Inc.</u>, No. 13-CV-7247, 2015 WL 1439880 at *16 (E.D.N.Y. Mar. 27, 2015); <u>Abdell</u> v. <u>City of N.Y.</u>, 2015 WL 898974 at *2.

1992), <u>cert. denied</u>, 506 U.S. 1053, 113 S. Ct. 978 (1993)), <u>R. & R. adopted</u>, 2009 WL 424136 (S.D.N.Y. Feb. 19, 2009); <u>see</u>, <u>e.g.</u>, <u>Louis Vuitton Malletier S.A.</u> v. <u>LY USA, Inc.</u>, 676 F.3d 83, 111 (2d Cir. 2012) ("In assessing the reasonableness of attorney's fees, a court looks to the amount of time spent as reflected in contemporaneous time records, and then decides how much of that time was 'reasonably expended.'  If the district court finds that some of the time was not reasonably necessary to the outcome of the litigation, it should reduce the time for which compensation is awarded accordingly." (citation omitted)).[31]/

Plaintiffs cannot recover for time spent by attorneys completing administrative tasks. <u>See</u>, <u>e.g.</u>, <u>Sheet Metal Workers' Nat'l Pension Fund</u> v. <u>Coverex Corp. Risk Solutions</u>, 2015 WL 344896 at *13; <u>DeMarco</u> v. <u>Ben Krupinksi Gen. Contractor, Inc.</u>, No. 12-CV-0573, 2014 WL 3696020 at *9 (E.D.N.Y. July 22, 2014); <u>Lane Crawford LLC</u> v. <u>Kelex Trading (CA) Inc.</u>, 12 Civ. 9190, 2013 WL 6481354 at *8 (S.D.N.Y. Dec. 3, 2013) (Peck, M.J.), <u>R. & R. adopted</u>, 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014); <u>E.S.</u> v. <u>Katonah-Lewisboro Sch. Dist.</u>, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011) ("A court may make [across-the-board percentage] reductions when attorneys engage in less skilled work, like filing and other administrative tasks [such as] . . . faxing and mailing documents, making copies, filing, scanning, preparing documents for electronic filing, electronic file management, binding documents, and Bates stamping."), <u>aff'd</u>, 487 F. App'x 619 (2d Cir. 2012).[32]/

---

[31]/     <u>See also</u>, <u>e.g.</u>, <u>Dominguez</u> v. <u>B S Supermarket, Inc.</u>, 2015 WL 1439880 at *16; <u>Deng</u> v. <u>278 Gramercy Park Grp. LLC</u>, 2014 WL 1016853 at *12.

[32]/     <u>See also</u>, <u>e.g.</u>, <u>Lucerne Textiles, Inc.</u> v. <u>H.C.T. Textiles Co.</u>, 12 Civ. 5456, 2013 WL 174226 at *7 (S.D.N.Y. Jan. 17, 2013) (Peck, M.J.), <u>R. & R. adopted</u>, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013); <u>Short</u> v. <u>Manhattan Apartments, Inc.</u>, 286 F.R.D. 248, 255 (S.D.N.Y. 2012); <u>Ryan</u> v. <u>Allied Interstate, Inc.</u>, 882 F. Supp. 2d 628, 636 (S.D.N.Y. 2012) (Peck, M.J.); <u>All-</u>
(continued...)

Second, case law also makes clear that the Court may reduce the fees requested for billing entries that are vague and do not sufficiently demonstrate what counsel did.  See, e.g., Sheet Metal Workers' Nat'l Pension Fund v. Coverex Corp. Risk Solutions, 2015 WL 344896 at *12; Lane Crawford LLC v. Kelex Trading (CA) Inc., 2013 WL 6481354 at *8; Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 2013 WL 174226 at *8, *10 & n.19; VFS Fin., Inc. v. Pioneer Aviation, LLC, 08 Civ. 7655, 2009 WL 2447751 at *5 (S.D.N.Y. Aug. 11, 2009) (Peck, M.J.) ("Having reviewed [plaintiff's] attorneys' time sheets, the Court believes that a number of [plaintiff's] attorneys' billing entries are overly vague or duplicative, and that a percentage fee reduction therefore is appropriate."); J.S. Nicol, Inc. v. Peking Handicraft, Inc., 03 Civ. 1548, 2008 WL 4613752 at *4 (S.D.N.Y. Oct. 17, 2008) (Peck, M.J.) ("A time entry is vague if it lacks sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed.  Where billing records are vague, a [percentage] reduction in fees is . . . appropriate." (citations, quotations & fn. omitted)).[33]/

---

[32]/     (...continued)
Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d 613, 629 (S.D.N.Y. 2011) (Berman, D.J. & Peck, M.J.) (reducing fees where entries "reflect work done at an attorney rate that could and should have been done by a paralegal or secretary"); Nat'l Audubon Soc'y, Inc. v. Sonopia Corp., 09 Civ. 0975, 2010 WL 3911261 at *5 (S.D.N.Y. Sept. 1, 2010) ("[A]dditional set-offs are necessary to account for the time spent on such less-skilled work [such as] . . . completion of the civil cover sheet, review of ECF procedures, and meeting with court clerks to discuss order to show cause and default judgment procedures."), R. & R. adopted, 2010 WL 5373900 (S.D.N.Y. Dec. 22, 2010); Tucker v. City of N.Y., 704 F. Supp. 2d 347, 356 (S.D.N.Y. 2010).

[33]/     See also, e.g., Prince of Peace Enter., Inc. v. Top Quality Food Mkt. LLC, 07 Civ. 349, 2014 WL 793084 at *7 (S.D.N.Y. Feb. 28, 2014), R. & R. adopted in relevant part, 2015 WL 456645 (S.D.N.Y. Feb. 3, 2015); Short v. Manhattan Apartments, Inc., 286 F.R.D. at 255 ("A court may reduce requested fees if the attorneys' documentation of their hours is vague . . . ."); Ryan v. Allied Interstate, Inc., 882 F. Supp. 2d at 636; Carrasco v. W. Vill. Ritz Corp., 11 Civ. 7843, 2012 WL 2814112 at *7 (S.D.N.Y. July 11, 2012) (Peck, M.J.)
(continued...)

Third, a reduction is warranted where the hours billed are disproportionate to the quantity or quality of the attorneys' work.  See, e.g., Lane Crawford LLC v. Kelex Trading (CA) Inc., 2013 WL 6481354 at *9; Lucerne Textiles, Inc. v. H.C.T. Textiles Co., 2013 WL 174226 at *8, *10; Harris v. Fairweather, 11 Civ. 2152, 2012 WL 3956801 at *8 (S.D.N.Y. Sept. 10, 2012) (Peck, M.J.) ("In determining the reasonableness of the requested attorneys' fees, the Court considers the quality of the work done by the attorneys. . . .  In light of the mediocre attorney performance, the vague billing entries and excessive time spent on certain tasks, the Court should reduce the total attorneys' fees . . . ." (citing cases)), R. & R. adopted, 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012); Rolex Watch, U.S.A., Inc. v. Pharel, No. 09 CV 4810, 2011 WL 1131401 at *7 (E.D.N.Y. Mar. 11, 2011) (reduction warranted where brief "did not contain particularly complicated analyses" and omitted certain arguments entirely), R. & R. adopted, 2011 WL 1130457 (E.D.N.Y. Mar. 28, 2011); Gesualdi v. Cirillo, No. 09-CV-4570, 2011 WL 666196 at *5 (E.D.N.Y. Jan. 3, 2011) (reduction warranted where "the 26.1 total hours billed on this matter do not reflect the quality of work submitted to the Court"), R. & R. adopted, 2011 WL 666197 (E.D.N.Y. Feb. 14, 2011).[34]

---

[33]/   (...continued)
(reducing attorney's hours where "some of the billing entries are vague and the time spent excessive"), R. & R. adopted, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012); Gordon v. Site 16/17 Dev., LLC, 11 Civ. 0427, 2011 WL 3251520 at *5 (S.D.N.Y. July 28, 2011) (Peck, M.J.) ("When time records reflect vague and duplicative entries, and entries for attorneys performing ministerial tasks, the Court may order a reduction in attorneys' fees." (citing cases)).

[34]/   See also, e.g., Dominguez v. B S Supermarket, Inc., 2015 WL 1439880 at *17 (10% reduction warranted where "the 80.4 hours spent by plaintiff's counsel on this case exceeds the amount of time that reasonably should have been spent"); Deng v. 278 Gramercy Park Grp. LLC, 2014 WL 1016853 at *20-21 (reduction warranted for, inter alia, disproportionate time spent on one plaintiff's claims although they were the same as the other plaintiff's claims, overstaffing, duplicative work, and failure to submit any documentation to support fees for time spent preparing "a memorandum that is remarkably devoid of law"); Truong
(continued...)

Laboy's counsel provides contemporaneous billing records and seeks $34,966.75 for

43.45 hours of work by Mr. Costin, 53.15 hours of work by Ms. Okraku, and 27.28 hours of work

by Ms. Urena.  (Ex. F: Time Sheets.)  The Court finds that 123.88 hours billed by two attorneys and

a paralegal is excessive for a case in which defendants never appeared.  The billing records reflect

that the time spent on certain tasks was excessive or duplicative.[35/]  As a result, the Court finds that

a fifteen percent across-the-board reduction is appropriate, resulting in an award of $29,721.74 in

---

[34/]     (...continued)
v. N.Y. Hotel & Motel Trades Council, AFL-CIO, 07 Civ. 11383, 2011 WL 147689 at *3
(S.D.N.Y. Jan. 12, 2011) ("The Court is unclear as to why this document, presumptively a
standard form order, took up 8.75 hours of an associate['s] time.  Thus the Court reduces
[counsel's] billables . . . ."); OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc., 09 Civ. 8665,
2010 WL 5538552 at *5 (S.D.N.Y. Dec. 6, 2010) (reduction warranted where "attorneys
spent a total of 7.6 hours on the drafting of a cease-and-desist letter and related activities"
and excessive time was spent drafting a "nearly identical" document that "appears to be
boilerplate"), R. & R. adopted, 2011 WL 43459 (S.D.N.Y. Jan. 5, 2011); Microsoft Corp.
v. Computer Care Ctr., Inc., No. 06-CV-1429, 2008 WL 4179653 at *16 (E.D.N.Y. Sept. 10,
2008) (reducing fees where attorney "spent an excessive amount of time [1.9 hours, or $950]
composing a two-page letter to the Court requesting an extension of the discovery
deadline").

[35/]     For example, Ms. Okraku spent approximately 10.25 hours drafting Mr. Costin's two-page
affidavit in connection with counsel's application for certificate of default.  (See Ex. F:
Okraku Time Sheet: 9/9/15 Entries; 9/11/15 Entries; 9/16/15 Entry.)  Moreover, although
the entries are unclear, it appears that Ms. Okraku spent 29 hours drafting Mr. Costin's
affidavit (Dkt. No. 18-1) in support of the default judgment against defendants (Okraku
Time Sheet: 9/18/15 Entry; 9/21/15 Entry; 9/22/15 Entry; 9/30/15 Entry; 10/2/15 Entry;
10/6/15 Entry; 10/14/15 Entry; 10/16/15 Entry; 10/21/15 Entry), which Mr. Costin spent an
additional 10.1 hours revising (Ex. F: Costin Time Sheet: 10/2/15 Entry; 10/5/15 Entry;
10/14/15 Entry; 10/20/15 Entry; 10/26/15 Entry; 11/4/15 Entry; 11/6/15 Entry; 11/18/15
Entry; 11/23/15 Entry; 12/3/15 Entry; 12/24/15 Entry; 1/8/16 Entry; 1/10/16 Entry).  Mr.
Costin spent at least another 7 hours preparing a memorandum of law for the instant inquest
that is nearly identical to his affidavit submitted in connection with the default judgment.
(Compare Dkt. No. 18-1 with, Dkt. No. 27: Laboy Br.; see Costin Time Sheet: 4/20/16
Entry; 4/21/16 Entry; 4/22/16 Entry.)

attorneys' fees.[36/]  See, e.g., Cortes v. New Creators, Inc., 15 Civ. 5680, 2016 WL 3455383 at *8-9 (S.D.N.Y. June 20, 2016) (applying 15% reduction to compensate for issues including excessive and duplicative billing on certain tasks); Clarke v. Hudson Valley Fed. Credit Union, 14 Civ. 5291, 2016 WL 884667 at *8 (S.D.N.Y. Mar. 8, 2016) (15% reduction to eliminate "excessive and unnecessary work performed"); Lane Crawford LLC v. Kelex Trading (CA) Inc., 12 Civ. 9190, 2013 WL 6481354 at *9-10 (S.D.N.Y. Dec. 3, 2013) (Peck, M.J.) (reducing attorneys' fees by 15% for excessive time and vague, duplicative billing entries), R. & R. adopted, 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014); M.C. v. Dep't of Educ., 12 Civ. 9281, 2013 WL 2403485 at *14 (S.D.N.Y. June 4, 2013) (Peck, M.J.) (20% reduction for excessive and vague billing entries), R. & R. adopted, 2013 WL 3744066 (S.D.N.Y. June 28, 2013); Carter v. Wolf, No. 06CV1351, 2013 WL 1946827 at *5 (D. Conn. May 9, 2013) ("the Court finds that an additional 15 percent reduction for vague and/or excessive entries is warranted"); Harris v. Fairweather, 11 Civ. 2152, 2012 WL 3956801 at *8 (S.D.N.Y. Sept. 10, 2012) (Peck, M.J.) ("In light of the mediocre attorney performance, the vague billing entries and excessive time spent on certain tasks, the Court should reduce the total attorneys' fees sought by twenty percent . . . ."), R. & R. adopted, 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012).

### H.    Joint and Several Liability[37/]

Laboy alleges that Prince and Maglio were the principals of Office Equipment & Supply Corp. and exercised significant control over the terms and conditions of his employment. (See page 3 above.)  Under both the FLSA and NYLL, individual defendants Prince and Maglio are

---

[36/]    This reduction is further warranted due to Laboy's counsel's copy-and-paste complaint that deprived Laboy of recovery for NYLL minimum wages.  (See pages 7-8 above.)

[37/]    The Court already has determined that defendants are jointly and severally liable under the NYCHRL.  (See page 25 above.)

considered employers and thus individually liable along with Office Equipment & Supply Corp.

29 U.S.C. § 203(d); N.Y.L.L. §§ 2(5)-(6); see, e.g., Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132,

139-40 (2d Cir. 1999); Andrade v. 168 First Ave Rest. Ltd., 14 Civ. 8268, 2016 WL 3141567 at *12

(S.D.N.Y. June 3, 2016) (Peck, M.J.), R. & R. adopted, 2016 WL 3948101 (S.D.N.Y. July 19,

2016); Guaman v. Krill Contracting, Inc., No. 14-CV-4242, 2015 WL 3620364 at *3 (E.D.N.Y. June

9, 2015); Liu v. Jen Chu Fashion Corp., 00 Civ. 4221, 2004 WL 33412 at *6 (S.D.N.Y. Jan. 7, 2004)

(Peck, M.J.); Chung v. New Silver Palace Rest., Inc., 272 F. Supp. 2d 314, 318 & n.6 (S.D.N.Y.

2003) (test for employer under N.Y. Labor Law is same as Herman test under FLSA).  Because

defendants defaulted, they cannot now challenge liability, and thus are held jointly and severally

liable.  See, e.g., Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158, 161

(2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded

allegations of liability . . . ."), cert. denied, 506 U.S. 1080, 113 S. Ct. 1049 (1993); Andrade v. 168

First Ave Rest. Ltd., 2016 WL 3141567 at *12; Mestousis Enters. Inc., v. Concord Blue Inc., 11 Civ.

3384, 2012 WL 254987 at *5 n.13 (S.D.N.Y. Jan. 27, 2012) (Peck, M.J.), R. & R. adopted, 2012 WL

1193752 (S.D.N.Y. Apr. 10, 2012); Felix Produce Corp., v. New Lots Food Corp., No. 08-CV-5161,

2009 WL 2985444 at *2 (E.D.N.Y. Sept. 14, 2009) ("By virtue of the well-pleaded factual

allegations in the complaint which are deemed true by virtue of [defendants'] default, the

undersigned finds that [plaintiff] has established joint and several liability . . . ."); Ting Yao Lin v.

Hayashi, 08 Civ. 6071, 2009 WL 289653 at *8 (S.D.N.Y. Jan. 30, 2009) (Peck, M.J.); La Barbera

v. Les Sub-Surface Plumbing, Inc., No. 06 CV 3343, 2008 WL 906695 at *4 (E.D.N.Y. Apr. 3,

2008) ("[P]laintiffs have adequately pled, and by virtue of defendants' default, have established the

joint and several liability of" defendants.); Chaman LAL Setia Exports Ltd. v. Sawhney, 00 Civ.

2838, 2003 WL 21649652 at *4 (S.D.N.Y. May 28, 2003) ("[D]efendants' joint and several liability

is established by the allegations made in the complaint and [the District Judge's] granting of a default judgment.").

## CONCLUSION

For the reasons discussed above, judgment should enter for Laboy against defendants, jointly and severally, in the amount of $84,185.94, plus $30,121.74 in attorneys' fees and costs, and $1,840.26 in prejudgment interest, plus continuing prejudgment interest of $1.74 per day until judgment is entered.

Laboy's counsel is to serve a copy of this Report and Recommendation on defendants and file proof of service on ECF.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Ronnie Abrams, 40 Foley Square, Room 2203, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Abrams (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:          New York, New York
                September 29, 2016

                                        Respectfully submitted,

                                        _____
                                        **Andrew J. Peck**
                                        United States Magistrate Judge


Copies to:      Counsel (ECF)
                Judge Abrams